Carrollton A. Egberts, J.
This is a motion by third-party plaintiff (hereinafter referred to as “Howarth”) to dismiss three counterclaims in the answer of third-party defendant (hereinafter referred to as “Hart”) for alleged legal insufficiency.
The primary action was commenced by the Town of Ogden to compel compliance by a contractor (Howarth) with certain subdivision development and construction regulations. Howarth commenced a third-party action against Hart, the owner of one of the homes in the subdivision, on the ground that if the subdivision regulations had not been complied with, it was by reason of certain alleged acts by Hart. Hart counterclaimed against Howarth, his builder-vendor, on the ground (1) that he (Hart) was a third-party beneficiary of a contract between Howarth and the town to properly develop the subdivision in accordance with town regulations — a contract allegedly breached by Howarth; (2) that Howarth had fraudulently induced Hart to execute the purchase contract by oral representations regarding the quality of workmanship and materials in Hart’s home — oral representations allegedly breached by Howarth; and (3) that Howarth allegedly breached an implied warranty regarding the quality of workmanship and materials in Hart’s home.
The ground rules for disposition of a motion to dismiss for legal insufficiency have recently been enunciated by the Court of Appeals in Cohn v. Lionel Corp. (21 N Y 2d 559, 562 [1968]) where the court stated: “We are presently concerned solely with the legal sufficiency of plaintiff’s complaint. Upon such an analysis, a pleading is deemed to allege whatever can be implied from its statements by fair intendment * * * Indeed, the mandate of CPLE 3026 — pleadings shall be liberally construed — is particularly applicable here. For purposes of such a motion, the allegations are assuméd to be true * * * and the entire complaint is to be considered * * * The question then is whether there can be fairly gathered from all the averments the requisite allegations of a valid cause of action, cognizable by the courts of this State * * * Since this determination is made on pleadings alone, whether or not plaintiff will be able to establish his allegations by competent evidence is not a pertinent consideration.”
Howarth’s first contention is that the case of Moch Co. v. Rensselaer Water Co. (247 N. Y. 160 [1928]) bars Hart’s first *215 counterclaim based upon the third-party beneficiary theory. Contrary to Howarth’s argument, the Moch case does not stand for the proposition that a member of the public can never have privately enforcible third-party beneficiary rights arising out of a municipal contract with another. Moch turned upon the legal conclusion by the court that a municipality owes no special duty to individual members of the public by reason of the performance of an essential governmental function for the public generally. A failure to provide a benefit for the general public could not be equated with the affirmative commission of a privately actionable wrong. The underlying rationale of Moch might well be a policy decision to promote the performance of essential governmental functions by municipalities by insulating parties to municipal contracts from liability for potentially catastrophic losses resulting from nonperformance or a failure to properly perform such functions.
Even at a time contemporaneous with its decision, however, the rationale upon which the Moch opinion turned was subjected to severe criticism. (See, for example, Corbin, Liability of Water Companies for Losses by Fire, 19 Yale L. J. 425 [1910].) Although Moch continues to be recognized as the majority rule, it is only grudgingly followed. (See, for example, Reimann v. Monmouth Cons. Water Co., 9 N. J. 134 [1952]. Cf. Schuster v. City of New York, 5 N Y 2d 75 [1958] ; Steitz v. City of Beacon, 295 N. Y. 51, 55-56 [1945].) In fact with regard to third-party beneficiary contractual rights the Moch rule is increasingly being strictly limited to its facts and subjected to exceptions. Thus, if a plaintiff can show a special benefit to himself individually in contrast to any benefit he enjoys as a member of the public generally, he may be able to bring an action as a third-party beneficiary. (See the earlier case of Matter of International Ry. Co. v. Bann, 224 N. Y. 83 [1918]; cf. Schuster v. City of New York, supra.) Also, it may be that courts are more willing to entertain a third-party beneficiary claim where relatively minor property damage to a limited number of people is involved rather than potentially extensive personal injury liability to a large class of people. (Solmo v. Rosenberg, 31 Misc 2d 911 [Spec. Term, Nassau County, 1961]; cf. Spiegler v. School Dist. of City of New Rochelle, 39 Misc 2d 946 [Spec. Term, Westchester County, 1963].) The third-party beneficiary action similarly would seem to be more likely where the municipal party to the contract, like the alleged third-party beneficiary, is suing for enforcement of the contract. Insurance protection against large scale catastrophies arising out of the nonperformance or *216 improper performance of municipal contracts may also be a factor weighing in favor of the mitigation of the Moch rule.
On the foregoing, it is the conclusion of this court that a contractual relationship existed between the Town of Ogden and Howarth by reason of Howarth’s agreement to improve and subdivide the land in question in accordance with the specifications and regulations of the town in consideration of the town granting the necessary permits, etc. In addition to the alleged partial performance of the parties, this contractual relationship was evidenced by the submission of subdivision plans by Howarth and the filing of the same after town approval, and also the securing of a letter of credit by Howarth with the subsequent approval of the town. This contractual relationship inured to the benefit of a limited number of people — purchasers of homes in the subdivision — rather than the public generally. Hart is a member of this limited class and, accordingly, he is entitled to enforce this contractual relationship which is specifically beneficial to him. In reaching this conclusion this court must take notice of the all too often evidenced difficulty of purchasers of homes in exacting fair compliance with building contracts by builder-vendors. The remedy herein permitted must be limited to the specific facts as alleged. Within this limitation, third-party plaintiff’s motion to dismiss this counterclaim for legal insufficiency is therefore denied.
The second counterclaim alleging fraud in the inducement and resulting damage collateral to the contract has been conceded by the third-party plaintiff to be legally sufficient and accordingly will not be further considered herein.
The third counterclaim alleges damages by reason of alleged breach of express and implied warranties with regard to work performed and materials used in the construction of third-party defendant’s dwelling and.also the installation of public improvements allegedly required by the town on third-party defendant’s lot. Howarth moves to dismiss this counterclaim on the ground that, in the absence of fraud, a merger clause in the contract of sale for the subject premises extinguishes any right of action based upon an alleged breach of warranty.
While the contention of third-party plaintiff may represent the “traditional ” and generally followed view, recent case law statements and commentary indicate developments to the contrary. Thus, in Cohen v. Polera & Sons Constr. Corp. (N. Y. L. J., Sept. 30, 1958, p. 14, col. 4) where a purchaser sued his contractor-seller subsequent to closing after allegedly discovering defects in workmanship and materials in his newly con *217 structed home, the court held that a merger clause would not bar the action on the theory that the merger clause applied only to the sale of the land and not to the construction of the house which the court concluded was an agreement “ collateral ” to the sale of the land. The court in Staff v. Lido Dunes (47 Misc 2d 322 [Sup. Ct., Nassau County, 1965]) did not proceed on the rationale that the building agreement was collateral to the contract for the sale of land but nonetheless permitted the purchaser to proceed on a warranty theory concluding that while the parties might have intended the merger clause to bar subsequent suit for patent defects, they certainly could not have intended the clause to prohibit action to correct latent defects. (See, generally, Price v. Woodward-Brown Realty Co., 190 N. Y. S. 561, affd. 201 App. Div. 837 [1st Dept., 1922]; Terry v. Raif, 205 Misc. 1059 [Broome County Ct., 1954]; E. F. Roberts, The Case of the Unwary Home Buyer: The Housing Merchant Did It., 52 Cornell L. Q. 835, 857-862 [1967]; Comment, Merger of Land Contract in Deed, 25 Albany L. Rev. 122 [1961].)
In the case at bar, the contract in question, while not a building contract per se, did contain a number of provisions dealing with both interior and exterior construction on the subject premises. It is, therefore, the conclusion of this court that the counterclaim based upon implied warranty is legally sufficient and is not barred by the contract merger clause.
Third-party plaintiff’s arguments regarding the failure of Hart to specifically plead damages in each counterclaim do not under our liberal rules of pleading provide an independent basis to dismiss the counterclaims for legal insufficiency. Howarth can obtain whatever specific information it needs with respect to damages in the bill of particulars.
The motion to dismiss is therefore in all respects denied.