Abraham J. Gellinoff, J.
Defendants move to dismiss the complaint on various grounds. Essentially, the action seeks to close the Central Park, Prospect Park and Flushing Meadow zoos, and to transfer the animals to the New York Zoological Park, known as the Bronx Zoo. Plaintiffs are various individuals and organizations claiming a special concern and interest about the welfare of animals. Defendants are the City of New York, which operates the challenged zoos, and various of its officials; New York Zoological Society, which operates the Bronx Zoo, and various of its officials; and New York Medical College Flower and Fifth Avenue Hospitals, which has contracted with the city to perform veterinary services at the city zoos.
The amended complaint states eleven causes of action; all *834 make claims against the city, two against the Bronx Zoo and one against New York Medical College. The first seeks a judgment declaring that conditions in the city zoos constitute cruelty to animals in violation of sections 353, 356 and 370 of the Agriculture and Markets Law. The second and third seek judgments declaring that the conditions constitute waste of municipal assets, and a violation of section 532-9.0 of the Administrative Code of the City of New York, which mandates that gifts of property to the city, including animals in its zoos, "shall be forever properly protected, preserved and arranged for public use and enjoyment.” The fourth seeks a judgment declaring that conditions in the zoos constitute a common-law nuisance. The fifth, sixth and seventh allege violations of the Environmental Conservation Law, and Federal animal protection statutes; plaintiffs, however, concede that these claims do not state proper causes of action and should be dismissed.
The eighth cause of action alleges a breach of contract by New York Medical College, in that the animals in the city zoos receive inadequate medical care.
The ninth and tenth causes of action allege the illegal continuing existence of the city zoos, and that disposing of the animals other than to the Bronx Zoo is likewise illegal. The relief sought in these causes of action is an injunction restraining sale of animals from the city zoos, the closing of those zoos, and the compulsory transfer of all animals to the Bronx Zoo, with a direction to the Bronx Zoo to accept the animals.
The eleventh cause of action seeks a "summary inquiry” on the conditions in the city zoos pursuant to section 1109 of the city charter.
The city’s motion to dismiss the first cause of action is based on the claim that Sections 353, 356 and 370 of the Agriculture and Markets Law, being criminal in nature, do not provide a civil remedy; that, in any event, plaintiffs lack standing; and, moreover, that the cause of action inappropriately attempts to convert legislation aimed at preventing abuse of animals into a so-called "zoo code”.
Section 353, in pertinent part, provides that: "A person who * * * wilfully sets on foot, instigates, engages in, or in any way furthers any act of cruelty to any animal, or any act tending to produce such cruelty, is guilty of a misdemeanor, punishable by imprisonment for not more than one year, or by a fine of not more than five hundred dollars, or by both.” *835 Section 356, as relevant, provides that: "A person who, having impounded or confined any animal, refuses or neglects to supply to such animal during its confinement a sufficient supply of good and wholesome air, food, shelter and water, is guilty of a misdemeanor, punishable by imprisonment for not more than one year, or by a fine of not more than five hundred dollars, or by both.” Section 370, as here pertinent, provides that: "Any person owning, possessing or harboring a wild animal or reptile capable of inflicting bodily harm upon a human being, who shall fail to exercise due care in safeguarding the public from attack by such wild animal or reptile, is guilty of a misdemeanor, punishable by imprisonment for not more than one year, or by a fine of not more than five hundred dollars, or by both.”
The general rule is that "statutes which on their face provide penal sanctions also imply a private right of action” (Barnes v Peat, Marwick, Mitchell & Co., 69 Misc 2d 1068, 1070, mod on other grounds, 42 AD2d 15; see Couch v Steel, 118 Eng Rep 1193 [QB, 1854]; Bell v Hood, 327 US 678; Case Co. v Borak, 377 US 426; Fischman v Raytheon Mfg. Co., 188 F2d 783). "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied” (Texas & Pacific Ry. Co. v Rigsby, 241 US 33, 39).
The city does not dispute that plaintiffs are individuals and organizations with especial concern for and interest in the welfare of the animals housed in the city zoos. Indeed, many of these same plaintiffs have previously been held qualified to challenge Federal animal slaughter statutes (see Jones v Butz, 374 F Supp 1284). Accordingly, plaintiffs are deemed part of the class for whose benefit the statutes were enacted.
The city’s contention appears to be that the general rule providing a private right of action for violations of a penal statute ought not apply here. It argues that the Agriculture and Markets Law grants standing to enforce its provisions to specific authorities, precluding enforcement by these plaintiffs.
Section 371 of the statute, relied upon by the city, provides that: "A constable or police officer must, and any agent or officer of any duly incorporated society for the prevention of cruelty to animals may summon or arrest, and bring before a court or magistrate having jurisdiction, any person offending against any of the provisions of article twenty six [which *836 includes the pertinent sections] of the agriculture and markets law. Any officer or agent of said societies may lawfully interfere to prevent the perpetration of any act of cruelty upon any animal in his presence. Any of said societies may prefer a complaint before any court, tribunal or magistrate having jurisdiction, for the violation of any law relating to or affecting animals and may aid in presenting the law and facts before such court, tribunal or magistrate in any proceeding taken.” Section 372 provides that: "Upon complaint under oath or affirmation to any magistrate authorized to issue warrants in criminal cases, that the complainant has just and reasonable cause to suspect that any of the provisions of law relating to or in any wise affecting animals are being or about to be violated in any particular building or place, such magistrate shall immediately issue and deliver a warrant to any person authorized by law to make arrests for such offenses, authorizing him to enter and search such building or place, and to arrest any person there present found violating any of said laws, and to bring such person before the nearest magistrate of competent jurisdiction, to be dealt with according to law.”
The city’s contention that these provisions — placing, the power to enforce the relevant sections in the police and the Society for the Prevention of Cruelty to Animals — prohibit the attempt to enforce them by other interested persons and groups, is not without judicial support. In Walz v Baum (42 AD2d 643), the Appellate Division, Third Department, decided a case virtually identical to the instant matter. In dismissing a complaint of a private citizen seeking to enjoin State officials from alleged acts of cruelty to animals prior to slaughter, the court held that (p 644): "In view of the relief available pursuant to article 26 it appears that a citizen has ample remedies to protect against violations of the statute without resort to injunctive relief, whether the violators be public officials or ordinary citizens * * * In the present proceedings the plaintiff has failed to demonstrate standing as a citizen and taxpayer to enforce the provisions of said article 26 and, further, has failed to demonstrate a reasonable basis for equitable relief in view of the procedure set forth in section 372 of article 26”. A prior decision in the instant case, denying plaintiffs a preliminary injunction, disparaged plaintiffs’ claim of standing in dicta relying upon Walz.
The decision in Walz, however, and the prior decision in *837 this case, preceded the recent landmark decision of the Court of Appeals in Boryszewski v Brydges (37 NY2d 361). In Boryszewski the court, noting its "disposition to expand rather than to contract the doctrine” of standing (p 363), overruled prior law and held without dissent that a taxpayer has standing to challenge State legislation as unconstitutional. While the precise holding in Boryszewski may, of course, be easily distinguished from the instant case, the court’s expressed reasoning provides the basis for the conclusion to be reached here. For, the ratio decidendi of the court was that (p 364): "We are now prepared to recognize standing where, as in the present case, the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action. In the present instance it must be considered unlikely that the officials of State government who would otherwise be the only ones having standing to seek review would vigorously attack legislation under which each is or may be a personal beneficiary * * * Where the prospect of challenge to the constitutionality of State legislation is otherwise effectually remote, it would be particularly repellant today, when every encouragement to the individual citizen-taxpayer is to take an active, aggressive interest in his State as well as his local and national government, to continue to exclude him from access to the judicial process”.
In the instant case, too, denial of standing to these plaintiffs would seem, as a practical matter, to "erect an impenetrable barrier to any judicial scrutiny” of the lawfulness of the city’s maintenance of its zoos. Such denial would restrict judicial scrutiny to an instance in which the Society for Prevention of Cruelty to Animals, either itself, or through a police officer — a city employee — might arrest the Mayor of the City of New York, or one of his aides, and lodge criminal charges potentially resulting in a prison term.
It "must be considered unlikely” that such drastic action will be taken. Thus, unless the court holds that a civil proceeding may be brought by those, like plaintiffs, with a special interest, any challenge to the lawfulness of the city’s maintenance of the zoos would be "effectually remote.” This case presents issues of importance and significance to our society. And justice requires that judical inquiry and resolution of the grave questions not be thwarted.
The court therefore holds that the right to enforce the mandates of sections 353, 356 and 370 of the Agriculture and *838 Markets Law by civil action is implicit in these sections, notwithstanding the specific criminal sanction provided therein, and the enforcement procedures contained in sections 371 and 372. Plaintiffs have adequately demonstrated their special interest in the subject matter of this action. Accordingly, the court concludes that they have standing.
Finally, with respect to the first cause of action, the city urges that plaintiffs seek to convert the statute prohibiting cruelty to animals into a "zoo code”, and therefore it fails to state a cause of action. But the complaint does not allege that the city failed to comply with plaintiffs’ views as to how a zoo should be maintained. Rather, it alleges that:
"The animals are almost completely deprived of any meaningful or effective veterinary care, in that the most serious diseases and injuries are frequently permitted to go undiagnosed or untreated for long periods of time, or are misdiagnosed and treated improperly.
"The animals are wholly deprived of habitats even remotely proper for them, and are instead kept in conditions which are extremely detrimental to their physical and mental health and which contribute greatly to sickness, suffering and death among the animals.
"The animals receive wholly improper protection from the actual and potential brutality which can be expected of many members of the general public in New York City. Consequently, small and defenseless animals have been attacked in their cages, while other animals have been hurt or killed by attempts to rescue tormentors upon whom they have turned, and numerous animals have been stolen from the zoos.
"The animals are also kept in the charge of persons who are wholly untrained in animal care, who receive a salary calculated to attract few qualified persons, and who are given no formal training by the City in the care of animals.
"As a result of the absence of effective veterinary care, the lack of proper habitats, the inadequate protection, and the untrained zoo keepers, numerous animals in the City zoos die premature, unnatural and agonizing deaths, while great numbers of those who live are forced to endure the greatest physical and mental suffering”.
Moreover, in papers submitted upon this motion, plaintiffs have expanded upon those allegations. An affidavit by one of the city’s zoo keepers details the alleged lack of adequate *839 veterinary care, and the number of animal deaths and injuries, including some of the grisly details. Plaintiffs also submit an affidavit and report of the Chief Consultant of the World Federation for the Protection of Animals, based upon his study of conditions in the city’s zoos. He asserts, in great detail, the alleged poor physical condition of many of the zoos’ inhabitants, as well as the emotional damage assertedly caused by their environment:
"Among the seriously disturbed animals housed at Central Park mention should be made of six species of which individuals show typical symptoms of classic cage neurosis. Constant pacing by the tiger continues for hours whereas in more liberal conditions a tiger will pace up and down only for short periods and in anticipation, usually, of food. Comparable pacing backwards and forwards almost incessantly is again shown by a gray fox, a jaguarundi and coatimundi. A badger tries to overcome its frustrated need to exercise by pacing regularly in a figure of eight around its cage.
"Perhaps the most severe neurosis is to be seen in one of the Patas monkeys. This can be seen many times a day performing a highly stereotyped exercise much to the amusement of the public and the keepers entirely ignorant, apparently, of the distress which gives rise to the neurosis. The monkey, for minutes on end, will jump to and fro from front feet to hind feet while remaining on the same spot.
"The jaguarundi’s weird behaviour is explained by an educational notice stating that it is a champion climber and swimmer. The cage, however, provides merely a log, a wooden bench and a bowl of water as the only means of this animal expressing such abilities and fulfilling his needs.
"Equally elementary oversights are just as common at Prospect Park Zoo. Here nocturnal and semi-nocturnal animals such as the two badgers and one remaining red fox are forced to be in daylight since not even a simple box is offered in which they could escape the unwelcome light of day. Ignoring the standard wooden bench with which the cages are provided they are to be seen unnaturally hunched on this unyielding concrete floor beneath the benches in a vain attempt to escape at least some of the sunlight.
"Both of the zoos in question treat their elephants to the meanest area imaginable and no member of the public would willingly confine even white mice in comparable spaces. Indeed, if they tried to they would be prosecuted for cruelty in *840 most advanced countries. In Prospect Park, for example, two elephants are housed for weeks and months, without access to an almost equally minute outdoor area, in a pen measuring approximately two lengths by one and a half lengths. Conditions for the two elephants at Central Park are equally severe.
"The fact that many animals die within a short time of their admission is not surprising. That others live for twenty or more years in these conditions demonstrates the great tenacity they have for life even when it is reduced to little more than a mere existence of breathing, eating and sleeping.”
Additionally, plaintiffs have provided the court with reports made for the Marine Mammal Protection Division of the United States Department of Commerce, and the National Marine Fisheries Service, based upon the Central Park Zoo’s application to obtain additional sea lions. The first report dated April, 1975 recommended "that this facility not be allowed new animals.” This conclusion was based upon the Marine Mammal Veterinarian’s observation of present facilities:
"Water quality is highly questionable in that the turbidity was extremely poor and an objectionable odor was detectable. The overall appearance of the existing water was that of water that had been unchanged in several months, with no filtration * * * Overall animal holding area was filthy. Inside the holding area there were several signs of decaying feces and the odor was obvious. One of the two animals in the facility was in extremely poor condition and appeared to be in terminal condition. She should have been isolated in a treatment area.
"The food preparation area was also dirty and would not lend itself to be properly cleaned and sanitized * * * Marine mammal husbandry knowledge was not immediately obvious. The attending veterinarian was not available; therefore, in-depth discussions were not possible.”
In August, 1975, four months after the first report, another representative concluded that, "on the basis of the general unsanitary conditions found on my first visit, I recommend that no permit be issued at the present time.” He, too, found the water "dark and murky brown.” He concluded that "the feed room was a total, disaster area. Open doors with no screening allowed untold number of flies and other insects to *841 swarm over old. butcher block cutting tables, which were badly in need of cleaning.”
If all of these allegations are true — and for the purpose of this motion the truth must be assumed — then plaintiffs’ complaint constitutes far more than an attempt to formulate and enforce a "zoo code”. These allegations, if true, establish blatant cruelty to animals in violation of the provisions of the Agriculture and Markets Law.
Accordingly, the motion to dismiss the first cause of action is denied.
The second and third causes of action allege waste of public funds and property. The complaint alleges the expenditure of public funds in an illegal manner, namely, maintenance of the zoos in violation of the Agriculture and Markets Law. The claim of the "use of public property for entirely illegal purposes” (Kaskel v Impellitteri, 306 NY 73, 79) states proper causes of action for waste of public funds.
In their fourth cause of action, plaintiffs contend simply that the asserted mistreatment of animals constitutes a "common-law nuisance.” The naked allegations, however, fall far short of asserting sufficient facts upon which to predicate a cause of action for nuisance.
In their eighth cause of action, plaintiffs seek a judgment declaring that New York Medical College has breached its contractual obligation to the City of New York because of its purported failure to provide adequate veterinary services to the animals in the city’s zoos.
However, as the city correctly contends, plaintiffs lack standing to assert this claim. For, the contract is one for the benefit of a municipality; therefore, it is not enforceable by individual citizens on behalf of the municipality (Moch Co. v Rensselaer Water Co., 247 NY 160). Although, as plaintiffs urge in their memorandum of law, the Moch decision has not been without judicial detractors (see Town of Ogden v Howarth & Sons, 58 Misc 2d 213), it remains the law of this State unless and until overruled by the Court of Appeals.
Alternatively, plaintiffs posit the novel theory that the animals are third-party beneficiaries of the contract, and that —although no such relief is requested in the complaint, nor by cross motion — plaintiffs ought to be treated as guardians ad litem for the animals. They rely upon the determination in Byrn v New York City Health and Hosps. Corp. (38 AD2d 316, *842 revd on other grounds 21 NY2d 194, motion to expedite consideration d.en 409 US 821), in which the plaintiff was permitted to sue as guardian of a fetus. But plaintiffs have not furnished authority for the appointment by this court of a guardian on behalf of a nonhuman. In the absence of a formal motion, and the demonstration of adequate grounds, the court may not afford plaintiffs such relief.
Accordingly, the motion to dismiss this cause of action must be granted.
The ninth and tenth causes of action are asserted against the city and the Bronx Zoo. However, the ninth cause of action fails to make any allegations whatever with respect to the Bronx Zoo. Plaintiffs claim in the ninth cause of action that the city is presently selling some of the animals in its zoos, on the basis of bids received, and that: "Large numbers of the high bidders were private individuals, wholly unqualified to care for the animals; others were zoos in other cities; and still others were commercial animal dealers acting, on information and belief, on behalf of such other zoos, most or all of which contain conditions no better and possibly even worse, than those in the city zoos”. Plaintiffs claim that such sales violate sections 353, 356 and 370 of the Agriculture and Markets Law. While, upon a prior motion, plaintiffs’ evidence was not deemed sufficient to warrant granting a preliminary injunction of these sales, and such denial may have rendered this cause of action moot, the allegations of the complaint nevertheless suffice, as a pleading, to state a cause of action with respect to the city. The Bronx Zoo’s motion to dismiss this cause of action as to it is granted.
The tenth cause of action, against the city and the Bronx Zoo, alleges that:
"By reason of its numerous connections with the City as aforesaid, and on information and belief by reason of other connections not presently known to plaintiffs, and the great involvement of the City in its affairs, the Bronx Zoo has been rendered a public institution, equally responsible with the City for the future welfare of the animals now in the city zoos, and equally responsible for the alleviation of their present great suffering * * *
"By reason of the failure and refusal of the defendants Conway [General Director of the Bronx Zoo], Bronx Zoo, and Trustees to take custody of the animals now in the city zoos, and the consequent sale of the animals, these defendants and *843 the City defendants are jointly and severally in violation of Sections 353, 356 and 370 of the Agriculture and Markets Law of the State of New York”.
These allegations fail to state a justiciable cause of action against the Bronx Zoo. The New York Zoological Society is a private organization, although partially funded by the city. It has no responsibility for the animals currently in the city’s zoos. While section 532-9.0 of the Administrative Code of the City of New York makes it "lawful” for the city to transfer animals to the society in the event it determines to "discontinue” the Central Park Zoo, nothing in that or any other legislation requires the Bronx Zoo to accept any animals. And, of course, having no control over the animals now lodged in the city’s zoos, the Bronx Zoo cannot be said to be violating the Agriculture and Markets Law.
As the tenth cause of action posits no new claims against the city, and states no adequate cause of action against the Bronx Zoo, it is dismissed.
Finally, in the eleventh cause of action, plaintiffs seek a summary inquiry pursuant to section 1109 of the city charter. That section provides, in pertinent part, that: "A summary inquiry into any alleged violation or neglect of duty in relation to the property, government or affairs of the city may be conducted under an order to be made by any justice of the supreme court in the first or second judicial district on application of the mayor, the comptroller, the president of the council, any five councilmen, the commissioner of investigation or any ñve citizens who are taxpayers, supported by affidavit to the effect that one or more officers, employees or other persons therein named have knowledge or information concerning such alleged violation or neglect of duty” (emphasis added).
The city’s argument, in seeking to dismiss this cause of action, is that "the inquiry provided by Section 1109 of the New York City Charter is solely for the purpose of creating a public record * * * by bringing acts of corruption and clear violation of law by officials before the public * * * Here there is no violation of law whatsoever nor do plaintiffs have standing to sue”.
To the contrary, plaintiffs have alleged serious violations of law by the public officials charged with operating the city’s zoos, and their standing to "sue” is irrelevant to their standing to petition for a summary inquiry. Undisputedly, plaintiffs *844 constitute five citizens who are taxpayers, and who have submitted their own aifidavits, and those of others, supporting their "knowledge or information” concerning the alleged violations of law. They therefore state an adequate claim for a summary inquiry.
In sum, then, the motions to dismiss the complaint are granted to the extent of dismissing the fourth, fifth, sixth, seventh, eighth and tenth causes of action in their entirety, and the ninth cause of action with respect to the Bronx Zoo. In all other respects, the motions are denied.