OPINION OF THE COURT
 

 Jones, J.
 

 The Urban League of Rochester does not have legal standing to challenge the continuing authority of the Monroe County Manager to appoint members to the five-member county civil service commission without participation of the County Legislature.
 

 Based on its analysis of the individualized statutory enactments with respect to the form of Monroe County government, the Urban League of Rochester contends that, while the appointment of a five-member civil service commission by the County Manager alone was authorized by State statute until 1974, in that year State authorization for that exceptional procedure was withdrawn. The Urban League argues that since 1974, in accordance with the general mandate of section 15 (subd 1, par [a]) of the Civil Service Law, there should have been a three-member commission, each of whose members should have been appointed by the County Manager, but only with the advice and consent of the County Legislature.
 

 The Urban League instituted the present proceeding under CPLR article 78 for an order directing the appointment of a new Monroe County Civil Service Commission in conformity with its views as to the mandate of the Civil Service Law. Supreme Court dismissed the petition on the merits, and the Appellate Division, one Justice dissenting, affirmed. Without reaching the merits we now reverse and direct dismissal of
 
 *554
 
 the proceeding on the ground that the Urban League has no legal standing to institute this proceeding.
 

 In recent years, the doctrine of standing to seek judicial review of State and municipal governmental action has received continuing attention in our court. The present case is the latest chapter in this saga and presents an appropriate occasion to indicate that there are outer limits to what has been an expanding concept.
 

 In
 
 National Organization for Women v State Div. of Human Rights
 
 (34 NY2d 416) we held that a national organization "dedicated to eliminating discriminatory practices against women” (pp 419-420) representing a "class with a specific interest in the litigation in question” (p 420) had standing to challenge discrimination against females in the help wanted columns of a newspaper. In
 
 Matter of Burke v Sugarman
 
 (35 NY2d 39) we acknowledged the right of candidates for promotion on a civil service eligibility list to challenge civil service appointments made in alleged disregard of the list. Then in
 
 Matter of Douglaston Civic Assn. v Galvin
 
 (36 NY2d 1, 7) we accorded to an "appropriate representative association” the right "to act as representative of the group [individuals, concededly aggrieved residents and property owners] whose rights it is asserting.”
 

 Then came
 
 Boryszewski v Brydges
 
 (37 NY2d 361, 363) in which we expressly overruled prior cases in our court taking a more limited view and held that a citizen-taxpayer had standing "to test the constitutionality of a State statute authorizing the expenditure of State moneys”. At the same time the Legislature enacted a new article 7-A of the State Finance Law authorizing citizen-taxpayers to bring legal proceedings to challenge the "wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property” (L 1975, ch 827, eff Sept. 1, 1975; § 123-b).
 

 In the next chapter, our holding in
 
 Boryszewski
 
 was extended to give judicial recognition to the right of a citizen-taxpayer to question the constitutionality of a revenue-raising (as distinguished from a disbursing) measure
 
 (Wein v Carey,
 
 41 NY2d 498). Respecting the Legislature’s explicit resolution of the policy considerations involved however, in
 
 Wein v Comptroller of State of N. Y.
 
 (46 NY2d 394) we tempered the right to attack revenue-raising measures by holding that such
 
 *555
 
 right did not include the right to challenge the constitutionality of the issuance of State bond anticipation notes.
 

 The present case must be considered against this background.
 

 In support of its claim to standing in the present case the Urban League notes that among its organizational purposes is to decrease "unemployment among members of racial minorities in Monroe County” and that it is committed to "increasing minority employment in employment positions which are under the jurisdiction of the Monroe County Civil Service Commission” and to "increasing representation of racial minorities on public commissions and boards”. Attention is also drawn to the devotion by the Urban League of extensive resources to study of the Monroe County Civil Service Commission, its policies and procedures.
 

 The county civil service commission’s mission is broadly addressed to the full range of civil service employment in Monroe County. While, of course, the commission cannot countenance racial discrimination, it is not particularly charged with a focused responsibility as to this aspect of employment as, for instance, is the State Division of Human Rights. No persuasive reason is advanced, moreover, as tó why (to say nothing of whether) minority employment would be increased among civil service employees under the supervision of a commission with two fewer members or under a commission whose individual members could only be appointed with the approval of the County Legislature. In a raw statistical sense it would seem that the prospect of appointment of minority members to the commission would be greater with a five-member than with a three-member commission. In short, there is not here the evidently close parallelism of institutional concern between the organizational objectives of the opposing litigants which characterized the
 
 National Organization for Women
 
 case.
 

 Viewed in another perspective, the Urban League cannot claim entitlement to recognition as a representative unit acting on behalf of individual members whose interest and aggrievement are such as to accord them standing, as was true in the
 
 Douglaston Civic Association
 
 case. Nothing suggests that the members of the Urban League generally or in any subgroup (although perhaps displaying a more active interest than the general public in civic affairs, particularly as related to the advancement of the interests of members of
 
 *556
 
 ethnic minorities) should be classified differently from citizen-taxpayers at large in Monroe County. We are not prepared to recognize legal standing on the part of any citizen-taxpayer, without more, to obtain judicial scrutiny of the nonfiscal activities of the agencies of municipal government. The Urban League in this proceeding has not demonstrated that it falls within any of the categories of litigants whose right to standing we have so far recognized.
 

 For the reasons stated, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court, Monroe County, with directions to dismiss the proceeding for lack of legal standing of petitioner.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
 

 Order reversed, etc.