NEW YORK STATE COALITION FOR CRIMINAL JUSTICE, INC., et al., Appellants, v THOMAS A. COUGHLIN, III, as Commissioner of the New York State Department of Correctional Services, et al., Respondents.

Third Department, July 26, 1984

APPEARANCES OF COUNSEL

*Oliver & Oliver* (*Lewis B. Oliver, Jr., Harriet B. Oliver* and *Dorothy M. Keller* of counsel), for appellants.

*Robert Abrams, Attorney-General* (*Maurice K. Peaslee, Peter H. Schiff* and *Joan L. Craig* of counsel), for respondents.

*Madeline Kochen* and *Arthur Eisenberg* (*Barbara Pollack* of counsel), for New York Civil Liberties Union, *amicus curiae*.

*William J. Dean* (*Joan Vermeulen* of counsel), for Correctional Association of New York, *amicus curiae*.

OPINION OF THE COURT

MIKOLL, J.

Plaintiffs seek to permanently enjoin defendants from issuing bonds for prison construction. On April 15, 1983, the Governor signed into law the Prison Construction Act (L 1983, ch 56), which authorized the New York State Urban Development Corporation (UDC) to finance and participate in the development of correctional facilities on behalf of the State Department of Correctional Services (DCS). UDC is to issue bonds and notes in the amount of $380,000,000 to finance construction. Pursuant to the act, the Office of General Services (OGS) will construct prisons which will be rented by DCS for confinement of sentenced inmates. Under the act, $284,000,000 was appropriated from the State Capital Projects Fund to DCS for the construction costs of the project.

Plaintiffs, comprised of special interest groups and individual citizens and taxpayers, seek (1) a declaration pursuant to CPLR 3001 that the act is null and void because it violates sections 8 and 11 of article VII and sections 1 and 3 of article VIII of the State Constitution and (2) a permanent injunction enjoining the issue of the bonds and any action toward affecting the act's purposes. Special Term granted summary judgment to defendants on all causes of

action except the sixth one, which was severed, on the ground that plaintiffs lacked standing to maintain the action. At issue in this proceeding are the following questions: (1) do plaintiffs have standing to challenge the statute, and (2) does the Prison Construction Act violate the State Constitution?

Plaintiffs contend that Special Term erred in determining that they do not have standing to challenge the constitutionality of the Prison Construction Act. Plaintiffs urge entitlement to sue based on three premises: (1) as voters who have been denied their right to vote in a referendum submitted to the people at a general election pursuant to section 11 of article VII of the State Constitution, (2) as taxpayers under a common-law right, and (3) as citizen-taxpayers under subdivision 1 of section 123-b of the State Finance Law.

■ Addressing the standing issue in *Wein v Comptroller of State of N. Y.* (46 NY2d 394), the Court of Appeals held that a citizen-taxpayer does not have standing to challenge the constitutionality of the issuance of State bond anticipation notes under subdivision 1 of section 123-b of the State Finance Law, which grants a citizen-taxpayer standing with respect to State expenditures but does not apply to revenue raising. Plaintiffs urge, however, that if the "exception" of subdivision 1 of section 123-b of the State Finance Law, which denies a taxpayer standing to maintain an action with respect to the issuance of State bonds or bond anticipation notes, is applicable, that section nonetheless does not bar plaintiffs' constitutional challenge to the act under a common-law theory because section 123-i of the State Finance Law provides that "[n]othing in this article shall abridge or alter rights of actions or remedies now or hereafter existing". In addressing the same issue, the *Wein* court concluded that in view of the clear legislative intent to prevent taxpayer challenges in such cases, it was inappropriate for the courts to confer standing. We find *Wein* to be dispositive and thus concur with defendants' contention that *Wein* is fully controlling on both the issue of common-law taxpayer standing and on the applicability of subdivision 1 of section 123-b of the State Finance Law.

■ Plaintiffs' additional contention that they have standing as voters who have been denied their right to vote in a referendum submitted to the people at a general election, pursuant to section 11 of article VII of the State Constitution, is raised for the first time on appeal. The record before Special Term is bereft of this argument and is also missing the necessary supporting allegations that the individual plaintiffs here were voters. We, therefore, decline to address this aspect of the standing issue.

■ We do, however, find valid support in *Ofenloch v Gaynor* (66 Misc 2d 185, affd 35 AD2d 913) for the individual plaintiffs' contention that they have standing as taxpayers. In *Ofenloch (supra)*, the court granted taxpayers and residents standing to challenge the validity of a lease agreement between BOCES and a realty company to see whether it was bona fide or a device to obviate a required referendum authorizing purchase of school property. The court found that there was a sufficient threatened injury to a personal right to warrant maintenance of a declaratory judgment action by the plaintiffs.

In *Boryszewski v Brydges* (37 NY2d 361, 364), in relaxing the standing requirements of the State so as to afford a party the right to sue, the Court of Appeals referred to the circumstances where denial of standing "would * * * in effect * * * erect an impenetrable barrier to any judicial scrutiny of legislative action". Similarly, in *Wein v Comptroller of State of N. Y. (supra,* p 397, n), the Court of Appeals noted that "[i]t may be that in an extraordinary case a taxpayer's standing may itself rise to a level of a constitutional right".

We conclude that such circumstances exist here. If the individual plaintiffs are not allowed to pursue the action, it is unlikely that a judicial challenge to the act's legality can be mounted. On this basis we grant the individual plaintiffs standing.

As to the organizational plaintiffs, we find to the contrary. Case law dealing with organizational standing indicates that an organization must have aggrieved members or a specific interest in the litigation in question if it is to be afforded standing (see *Matter of Urban League v County of Monroe,* 49 NY2d 551; *National Organization for Women*

*v State Div. of Human Rights,* 34 NY2d 416). Here, the interests represented by plaintiffs are those of concerned citizens or taxpayers who wish to limit the number of individuals incarcerated in the State or, as in the case of New York Public Interest Research Group, Inc., those of citizens concerned with public finances or fiscal responsibility. The issue here is whether a constitutional mandate has been sidestepped. We conclude that the organizational plaintiffs do not have independent standing to maintain this action, absent substantiation of a specific interest or aggrieved members.

We pass now to the crucial question underlying this action — whether the Prison Construction Act violates the State Constitution. Plaintiffs contend that it contravenes section 8 (subd 1) of article VII of the State Constitution in that it provides for a gift or loan of the State's credit to UDC. Section 8 (subd 1) of article VII reads as follows: "The money of the state shall not be given or loaned to or in aid of any private corporation or association, or private undertaking; nor shall the credit of the state be given or loaned to or in aid of any individual, or public or private corporation or association, or private undertaking, but the foregoing provisions shall not apply to any fund or property now held or which may hereafter be held by the state for educational, mental health or mental retardation purposes."

Plaintiffs claim that subdivision (2) of section 13 of the Prison Construction Act constitutes a guarantee by the State to pay $380,000,000 should UDC default on payment of the bonds, and that this violates section 8 of article VII of the State Constitution. Subdivision (2) of section 13 of the act provides: "The state shall and hereby agrees to and does indemnify and save harmless the corporation from and against any and all liability, loss, damage, interest, judgments and liens growing out of, and any and all costs and expenses (including, but not limited to, counsel fees and disbursements) arising out of or incurred in connection with any and all claims, demands, suits, actions or proceedings which may be made or brought against either of them (a) arising out of any determinations made or actions taken or omitted to be taken or compliance with any

obligations under or pursuant to the terms of this act, or (b) for or in relation to any injuries, including death at any time resulting therefrom, sustained by any person or persons, or on account of damage to or loss of property, through theft or otherwise, to the extent the same arises out of or in consequence of (i) the planning, design, site clearance or demolition or construction of, or any other work or things done in or about the correctional facilities or any part thereof, and (ii) the use, alteration, repair, condition, operation, maintenance or management of the correctional facilities or any part thereof or the property adjacent thereto, but in each such case only to the extent that the corporation is not otherwise compensated therefor by insurance."

■ While we find the section to be ambiguous and note that it may possibly be interpreted as plaintiffs contend, we must begin with the premise that the legislative act is presumed constitutional. Such presumption can be upset only by proof persuasive beyond a reasonable doubt (*Montgomery v Daniels,* 38 NY2d 41). It is necessary to glean what we can as to the act's purposes from any available legislative sources. Supportive of constitutionality is section (m) of the memorandum of the State Executive Department which provides: "The State would indemnify UDC against, and hold the Corporation harmless from, any expenses or liability for any claims related to the design, construction, reconstruction or renovation of correctional facilities" (Memorandum of State Executive Department, McKinney's Session Laws of NY, 1983, p 2399).

This memorandum lends credence to defendants' argument as to the true nature of the agreement between the parties.* We choose to resolve the question of the interpretation of the statute in a manner consistent with the statute's constitutionality (*Matter of Lorie C.,* 49 NY2d 161; see, generally, McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subd c). We conclude that no indemnity has been undertaken with respect to the bonds and the Prison Con-

---

* Defendants contend that the section is limited to claims based on personal injury or property damage arising out of planning, design, construction or work done in or about the correctional facilities, or out of the use, alteration, repair, maintenance or operation of the correctional facilities.

struction Act does not violate section 8 (subd 1) of article VII of the State Constitution.

Finally, plaintiffs challenge the Prison Construction Act on the basis that it violates section 11 of article VII of the State Constitution in that its provisions provide for the contraction of a debt by or in behalf of the State for payment from the general fund of the State for the debt service of UDC bonds in the amount of $380,000,000 without having submitted the question to the people in a referendum at a general election. We note that if plaintiffs are to prevail, this argument must also overcome the strong presumption of constitutionality which attaches to a legislative enactment.

Plaintiffs argue that the denomination of the agreement between UDC and the State as a "lease" is just a semantic device and that, in effect, the Prison Construction Act creates a debt of the State because once the proceeds of the UDC bond sale are paid into the general fund of the State, the general fund incurs a debt of $380,000,000 which must be paid by the State whether the payments are termed "rent" or "debt service". The case of *Wein v City of New York* (36 NY2d 610) is instructive on the question. There, a plan existed whereby debt service on bonds issued by a public corporation were to be paid from a fund to be replenished annually by the city through appropriation. The Court of Appeals found no city debt in the plan. Of relevance also is *Wein v Levitt* (42 NY2d 300, 304), in which the Court of Appeals held that debts, whether contingent or fixed, paid out of current appropriations in the State's general fund, replenished by the collection of taxes and which are necessary for the ongoing business of State government, are not subject to a challenge under section 11 of article VII of the State Constitution.

On a final note, where, as here, we are called upon to deal with an intricate scheme for public financing or for public expenditures designed to meet a public interest, the court must proceed in its review with much caution. It is the Legislature which is mandated to make policy decisions in such areas and the court may not invalidate its decisions, enacted into law, out of a mere preference for a

different or more restrained approach (*Hotel Dorset Co. v Trust for Cultural Resources*, 46 NY2d 358).

The judgment should be affirmed.

KANE, J. P., MAIN, WEISS and LEVINE, JJ., concur.

Judgment affirmed, without costs.