■ In the Matter of GENERAL BUILDING CONTRACTORS OF NEW YORK STATE, INC., et al., Appellants, v JOHN C. EGAN, as Commissioner of General Services of the State of New York, et al., Respondents. (And Six Other Related Proceedings.) — Appeals (1) from three judgments of the Supreme Court at Special Term (Bradley, J.), entered October 12, 1983 in Albany County, which dismissed petitioners' applications, in proceedings pursuant to CPLR article 78, to restrain respondents from letting bids, awarding contracts or proceeding with construction in connection with certain prison construction projects until the contract conditions and specifications comply with the law and (2) from four judgments of the Supreme Court at Special Term (Cobb, J.),

entered December 9, 1983 in Albany County, which dismissed petitioners' applications, in proceedings pursuant to CPLR article 78, for similar relief.

Petitioners are trade organizations representing contractors interested in bidding on various aspects of construction projects which were devised to increase the capacity of New York State's correctional facilities. The planned expansion and renovation, which was authorized in 1983 (L 1983, ch 56), included the following projects denominated by area: Altona (Clinton County), Alden (Erie County), Watertown (Jefferson County), Lyon Mountain (Clinton County), Coxsackie (Greene County) and Ogdensburg (St. Lawrence County). The Office of General Services (OGS) and the Urban Development Corporation, along with the Department of Correctional Services (DOCS), were authorized by the Legislature to finance and oversee the expansion effort. OGS began to develop contract documents and to solicit bids on the projects during the summer and early fall of 1983. Believing that the OGS contract documents and bid specifications imposed unlawful requirements on potential contractors, petitioners initiated a series of CPLR article 78 proceedings designed to restrain respondents from going forward with any of the projects until what petitioners perceived to be contract illegalities were rectified. Brought in two phases, the seven proceedings challenged provisions requiring the coordination of the prime contracts by the general contractors, the use of closed material specifications, allegedly improperly referenced prevailing wage statements, and affirmative action programs with participation goals of 15% for minorities, women and minority business enterprises.

Three judgments dismissing the first phase of the proceedings commenced were entered on October 12, 1983; four judgments dismissing the second phase of proceedings were thereafter entered December 9, 1983. The October 12, 1983 judgments addressed and rejected all but one of petitioners' afore-mentioned objections to the contracts. The December 9, 1983 judgments largely disposed of the underlying petitions on *res judicata* grounds, although the previously undecided issue of the propriety of the method by which prevailing wage rates were established was resolved against petitioners. Petitioners appeal all seven of the judgments entered.

We consider these appeals to be moot and find no compelling reason to examine the merits raised therein. Alternatively, we are of the view that petitioners' claims for relief on these appeals are barred by laches because of the delay in pursuing the appeals.

The mootness doctrine enjoins appellate review of academic questions (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707). Petitioners herein seek to restrain respondents from opening bids, awarding contracts or proceeding with any construction work until the contracts at issue comply with relevant State and Federal law, and further to void the contract and bid documents with directions to respondents to correct the deficiencies. However, according to respondents, all the projects were over 85% completed as of September 4, 1984 and 17 of 24 of them were 99% to 100% completed. These statistics comport with the emergency nature of the undertaking and the anticipated completion dates for each of the various projects. For example, the Commissioner of DOCS, as of July 21, 1983, projected that the Alden renovation would be completed September 1, 1983; Ogdensburg and Watertown on January 15, 1984, and Altona on March 1, 1984. There is no evidence to the contrary. Granting judicial relief here is therefore inappropriate for it would no longer serve any but academic purposes (cf. *Matter of Oliver v Postel,* 30 NY2d 171, 183; *Place v City of White Plains,* 81 AD2d 660, mot for lv to app dsmd 54 NY2d 833); voiding these fulfilled and nearly fulfilled contracts would simply cause unacceptable disorder and confusion (*Matter of Stilsing Elec. v County of Albany,* 97 AD2d 631, 632).

Furthermore, this matter does not appear to come within an exception to the mootness doctrine as enumerated in *Matter of Hearst Corp. v Clyne* (*supra,* pp 714-715). Not only were the projects involved embarked upon in response to an emergency, i.e., a shortage of housing in the State's correctional facilities, thus rendering this case sui generis, but the record is devoid of any indication that the particular provisions of the bid and construction documents being challenged will reappear in subsequent contracts.

As for the matter of laches, we note that despite awareness of the short-term, exigent nature of the projects, petitioners permitted over six months to elapse between the time of the last judgment appealed from (Dec. 9, 1983) and the filing of their briefs (June 21, 1984). Under the circumstances, this delay is unallowable.

Appeals dismissed as moot, without costs. Kane, J. P., Casey, Yesawich, Jr., and Levine, JJ., concur.