■ In the Matter of NEW YORK STATE ASSOCIATION OF COMMUNITY ACTION AGENCY BOARD MEMBERS et al., Appellants, v GAIL S. SHAFFER, as Secretary of State of the State of New York, Respondent.—Levine, J. Appeal from an order of the Supreme Court at Special Term (Conway, J.), entered January 18, 1985 in Albany County, which denied petitioners' motions for reargument of a previous motion of respondent for dismissal of the petition, for leave to file an amended petition and for issuance of a subpoena duces tecum.

A CPLR article 78 proceeding was initiated to challenge the awarding of grants by respondent to local community action program agencies pursuant to the Federal Omnibus Budget Reconciliation Act of 1981 (42 USC §§ 9901-9912), commonly called the Community Services Block Grant Act (CSBGA). Under CSBGA, Federal block grants for poverty programs are made to the various States for distribution to statutorily defined eligible entities providing designated services for the poor. In response to CSBGA, New York enacted its own Community Service Block Grant program (Executive Law art 6-D, added by L 1982, ch 728), giving respondent the responsibility for State-wide distribution of funding for such programs.

The petitioners who originated the article 78 proceeding on August 2, 1984 were the New York State Alliance of Community Action Programs, Inc. (the Alliance), a not-for-profit

corporate umbrella organization of the Associations of Community Action Program Directors and of board members of such agencies, and the New York State Association of Community Action Agency Board Members (the Association). The petition alleged in essence that respondent had improperly granted CSBGA funding applications to entities which were ineligible to receive them under the criteria set forth in CSBGA and that, by doing so, jeopardized New York's share in the Federal program and subjected the ineligible entities to recoupment. Petitioners sought relief by way of prohibition against the awarding and distribution of grants to the ineligible agencies.

By notice of motion dated August 10, 1984, respondent moved to dismiss the petition on the grounds that petitioners (1) lacked standing in that neither they nor their members were aggrieved; (2) failed to join as necessary parties the alleged ineligible agencies to whom grants have been awarded; and (3) failed to state a cause of action in that no facts were alleged establishing that the approved grantees were ineligible. Special Term reserved decision. By order to show cause dated August 31, 1984, petitioners sought leave to amend their petition and to permit the Yonkers Community Action Program, Inc., to intervene as a petitioner. The decision was also reserved on this motion.

Special Term rendered a decision mailed October 1, 1984 granting respondent's motion to dismiss the original petition on the ground that petitioners failed to set forth facts showing that they or their members would have been entitled to funding but for the illegal awards and, hence, were not aggrieved by respondent's acts. Petitioners then moved to reargue on the basis of the proposed amended petition, the motion in connection therewith still having been undecided. Petitioners also applied for a subpoena duces tecum requiring respondent to produce the funding applications of some 32 agencies claimed to be ineligible. Special Term rejected petitioners' motion to reargue, holding that the proposed amended petition failed to correct the deficiencies in the original petition concerning petitioners' lack of standing. The court also denied petitioners' application for a subpoena duces tecum as moot, in view of its denial of the motion to reargue. Petitioners then took this appeal from the adverse determinations of their motions.

The first issue to be addressed is respondent's contention that the entire appeal should be dismissed since its true underlying basis is an attack on Special Term's nonappealable

denial of petitioners' motion to reargue the prior dismissal of the petition. It is of course true that denial of a motion to reargue is not appealable *(see, e.g., Kagan v Alpert,* 109 AD2d 910), and that element of petitioners' appeal must therefore be dismissed. However, petitioners have also appealed from Special Term's denial of their application for leave to amend the petition. Special Term's order recites that the proposed amended petition was "accepted * * * for the purpose of consideration of petitioners' application for reargument only". The court's reception of the amended petition for that limited purpose certainly did not constitute the granting of petitioners' motion to amend, particularly since the decision evinces a clear intent to finally dispose of all of petitioners' claims. Otherwise, petitioners' motion for the issuance of a subpoena duces tecum could not have been dismissed as moot. Denial of permission to amend a pleading is not only appealable, but constitutes a reversible abuse of discretion in the absence of prejudice or surprise resulting from the delay in pleading the new matter originally *(McCaskey-Davies & Assoc. v New York City Health & Hosps. Corp.,* 91 AD2d 516, 517, *mod on other grounds* 59 NY2d 755; *Bronson v Potsdam Urban Renewal Agency,* 74 AD2d 967, 968). There is an exception to the general requirement of a showing of prejudice for denial of leave to amend when the proposed amended pleading is patently devoid of merit *(Walter v Bauer,* 88 AD2d 787, 788). Since petitioners sought to amend their petition within 30 days of the commencement of the proceeding, prejudice to the respondent clearly is not a viable ground for denial of leave to amend. Therefore, the only plausible interpretation of Special Term's order and decision is that leave to amend was in fact denied on the basis of Special Term's expressed conclusion that the amended petition failed to cure the deficiencies in the original petition as to petitioners' standing to sue.

This aspect of the appeal thus turns on whether Special Term was correct in holding that the amended petition and petitioners' moving papers failed to set forth a factual basis establishing standing.

Petitioners' allegations on their motion for leave to amend may be summarized as follows. The Alliance and the Association represent poverty agencies eligible for funding under CSBGA and who in prior years actually received awards under the predecessor Federal program. Moreover, the Alliance and the proposed intervenor, Yonkers Community Action Program, Inc., are eligible for direct awards, but their applications were denied by respondent. Respondent's written notice

to this effect cited as the only reason for rejection of their applications the limited funds available in relation to the number of applicants. Some 71 agencies were awarded grants by respondent, of which almost half failed to meet Federal statutory qualifications in that their governing boards were not composed of the required ratio of elected public officials, representatives of the poor and of other major interested community groups *(see,* 42 USC § 9904 [c] [3]). Administration of a State community action poverty program in substantial violation of Federal statutory requirements may result in the withholding of State funding (42 USC § 9908 [a] [1], [2]).

The foregoing, if true, sufficiently establishes petitioners' standing to challenge awards made by respondent under the CSBGA program in violation of the law. We have recently held that organizational parties have standing if they have aggrieved members or a specific interest (beyond merely that of concerned citizens or taxpayers) in the litigation in question *(New York State Coalition for Criminal Justice v Coughlin,* 103 AD2d 40, 43-44, *affd* 64 NY2d 660). The Alliance and the Association allege that they collectively represent numerous poverty agencies eligible and in competition for the limited funding available to the State under CSBGA. Clearly, these organizational petitioners represent members within the "zone of interest" in the decisions by respondent which directly affect their prospects in competing for grants and which, as they allege, may jeopardize New York's entire participation in the Federal poverty program *(see, Matter of Dairylea Coop. v Walkley,* 38 NY2d 6, 9). Therefore, the Alliance and the Association have a specific interest, greater than merely as representatives of concerned citizens or taxpayers, in respondent's administration of the program here involved *(see, National Org. for Women v State Div. of Human Rights,* 34 NY2d 416, 419-420; *cf. Matter of Urban League v County of Monroe,* 49 NY2d 551, 554-556; *New York State Coalition for Criminal Justice v Coughlin, supra).*

Petitioners also qualify for legal standing on the basis of having aggrieved members. In our view, Special Term too narrowly circumscribed the right to challenge respondent's administrative determinations by requiring petitioners to plead and prove that one or more of their members would have actually received CSBGA funding but for the awards to ineligible recipients. In *National Org. for Women v State Div. of Human Rights (supra,* p 420), the Court of Appeals stated, "Nor is it relevant that a named plaintiff was not directly refused employment based on sex as a result of the [allegedly

discriminatory] separate listing". It is sufficient that respondent's determination severely impaired the opportunity for funding under the program of petitioners' member agencies who were otherwise eligible, a fact readily inferable if almost half of all the awards exhausting New York's block grant were made to ineligible agencies. This follows from *Matter of Burke v Sugarman* (35 NY2d 39, 44-45), where persons eligible for permanent appointment from a civil service list were held to have standing to challenge illegal appointments of ineligible applicants for the positions in question, irrespective of the petitioners' ranking on the list, "so that [an eligible applicant] may receive consideration if his number is reached" *(supra,* at p 44). Eligibility, and not certainty, of appointment was thus sufficient to confer standing to challenge illegal designations to the contested positions in *Burke.* Likewise here, petitioners' and their members' eligibility for funding is sufficient to permit their challenge to the allegedly illegal awards to ineligible agencies.

A further factor militating in favor of standing in the instant case is that, unless petitioners are permitted to challenge respondent's determinations, the alleged illegal awarding of grants to agencies ineligible therefor under provisions of CSBGA will be effectively insulated from judicial review *(see, Matter of Burke v Sugarman, supra,* p 45; *see also, Boryszewski v Brydges,* 37 NY2d 361, 364).

Accordingly, that portion of Special Term's order denying petitioners leave to amend their petition and refusing intervention by Yonkers Community Action Program, Inc., should be reversed and both such applications granted. Denial of petitioners' application for a subpoena duces tecum on the ground of mootness must, therefore, also be reversed, and that matter must be remitted to Special Term for a determination on the merits.

Order modified, on the law, without costs, by reversing so much thereof as denied petitioners' motions for (1) leave to amend their petition and to permit Yonkers Community Action Program, Inc., to intervene as a party-petitioner, and (2) issuance of a subpoena duces tecum; said motions granted and matter remitted to Special Term for further proceedings not inconsistent herewith; and, as so modified, affirmed.

Appeal from that part of the order which denied petitioners' motion to reargue dismissed, without costs. Mahoney, P. J., Kane, Weiss and Levine, JJ., concur.

Casey, J., concurs in a separate memorandum. Casey, J.

(concurring). I agree with the majority insofar as it concludes that petitioners have standing since they represent members within the "zone of interest" affected by respondent's decision *(see, Matter of Dairylea Coop. v Walkley,* 38 NY2d 6). Having so concluded, there is no reason to search for an additional basis for standing, particularly one based upon conjecture and surmise.