HEYWOOD BURNS et al., Appellants, v JOHN C. EGAN, as Commissioner of the New York State Office of General Services, et al., Respondents.

Third Department, April 24, 1986

**APPEARANCES OF COUNSEL**

*Madeline Kochen* for appellants.

*Robert Abrams, Attorney-General (Richard J. Dorsey, Peter H. Schiff* and *Joan L. Craig* of counsel), for respondents.

**OPINION OF THE COURT**

WEISS, J.

We are today called upon to consider for the second time the constitutionality of the Prison Construction Act (L 1983, ch 56, as amended by L 1983, chs 712, 713) (hereinafter the Act), and as a threshold matter, to determine whether plaintiffs have standing as voters and taxpayers to challenge the Act as violative of their right to vote under NY Constitution, article VII, § 11, which mandates a public referendum before the State undertakes to incur a long-term debt.

We considered these underlying issues in *New York State Coalition for Criminal Justice v Coughlin* (103 AD2d 40, *affd* 64 NY2d 660). There, the plaintiffs comprised a bevy of special interest groups in addition to five individuals who identified themselves as "residents, citizens and taxpayers". The defendants in both the prior and instant action are the same governmental officials and agencies. The plaintiffs in this case, who are the same five individuals to whom standing was previously denied, now claim standing as "voters".

The record shows that the Act, which became law on April 15, 1983, authorized defendant Urban Development Corporation (UDC) to finance and develop prisons using $380 million to be raised by the issuance of bonds and notes. The Office of General Services (OGS) was to construct the prisons which, in turn, UDC would rent to the State Department of Correctional Services for a sum and duration commensurate with the debt-service on the bonds. At the expiration of the lease, the State could purchase the facilities from UDC for a nominal sum.

This financing scheme was developed after the voters rejected a referendum on a $500 million prison bond issue in the November 1981 general election.

In the prior action, the plaintiffs claimed that the Act violated certain provisions of the State Constitution *(see,* NY Const, art VII, §§ 8, 11; art VIII, §§ 1, 3). Special Term granted defendants' motion for summary judgment, finding that the plaintiffs lacked standing to challenge the issuance of bonds pursuant to State Finance Law article 7-A. In affirming, this court reasoned that the individual plaintiffs had standing, but upon consideration of the merits, upheld the constitutionality of the statute *(New York State Coalition for Criminal Justice v Coughlin,* 103 AD2d 40, 43, 44-47, *supra).* The Court of Appeals affirmed, holding that the plaintiffs had no standing as citizen taxpayers *(New York State Coalition for Criminal Justice v Coughlin,* 64 NY2d 660, 661-662), but refused to resolve the issue of whether they had standing as voters because the plaintiffs had failed to raise that issue at Special Term *(supra,* at p 662, n). The court did not reach the constitutional issue.

In January 1985, plaintiffs commenced the instant action asserting standing pursuant to State Finance Law article 7-A, as citizens, taxpayers and *voters* who have been denied the right to vote upon the State's incurrence of a long-term debt, and contending that the financing scheme was an unconstitutional attempt to circumvent the 1981 electoral defeat of the prison bond referendum. Special Term initially granted defendants' motion for summary judgment dismissing the complaint, apparently relying upon the Court of Appeals decision in *New York State Coalition for Criminal Justice v Coughlin* (64 NY2d 660, *supra),* and held that plaintiffs lacked standing. Plaintiffs' cross motion for leave to amend the complaint, so as to clarify the distinctions between this action and the earlier action which had been dismissed was denied on the ground that the State had already spent $178.3 million in the construction of prison facilities and would be prejudiced by the delay which had occurred. Upon reargument, Special Term accepted plaintiffs' standing to sue as *voters,* but ruled that the Act was constitutional (129 Misc 2d 130). This appeal by plaintiffs ensued.

We initially find persuasive defendants' assertion that laches serves as a bar to this action. Plaintiffs' original complaint, served August 29, 1983, more than four months after the effective date of the Act, both could, and should have,

asserted the individual plaintiffs' claims as voters. It was not until January 9, 1985, after the dismissal of their first action was affirmed by the Court of Appeals, that plaintiffs commenced this action, finally pleading their status as voters. Neglect in asserting a right for an unreasonable length of time may bar an action pursuant to the doctrine of laches (36 NY Jur, Limitations and Laches, § 154, at 142, 143 [1964]). In *New York Public Interest Research Groups v Levitt* (62 AD2d 1074, *appeal dismissed* 46 NY2d 849), this court held that a delay of 21 months in commencing an action after the Court of Appeals decision in *Boryszewski v Brydges* (37 NY2d 361 [recognizing taxpayer standing to challenge enactments of the Legislature]) was sufficient to invoke the doctrine of laches. As in the instant case, the plaintiffs in *New York Public Interest Research Groups v Levitt (supra)* sought to challenge a scheme for financing construction of State buildings (the Empire State Plaza in Albany) as set forth in a 1965 agreement. By the time the action was commenced in 1977, the bonds had been issued and sold, and construction was virtually complete.

We recognize that the delay here is not so severe as in *New York Public Interest Research Groups v Levitt (supra),* but delay is not the sole, nor necessarily the determinative, element of the laches equation. Indeed, this court has upheld a laches determination where the delay was less than a year's duration *(see, Matter of General Bldg. Contrs. v Egan,* 106 AD2d 688, 690, *lv denied* 65 NY2d 601; *Matter of Eberhart v La Pilar Realty Co.,* 45 AD2d 679, 680). "The essential element of laches is delay prejudicial to the opposing party" *(New York Public Interest Research Groups v Levitt, supra,* pp 1075-1076). Here, defendants waited for almost two years while plaintiffs exhausted all appeals in their citizen-taxpayer action before the sale of bonds by UDC. In the meantime, under compelling pressure to relieve the increasing burden on the State's overcrowded penal institutions, defendants commenced construction of correctional facilities, some of which have actually been put into use, and sold bonds for approximately $294 million. Adverse judicial action at this juncture would "cause unacceptable disorder and confusion" *(Matter of General Bldg. Contrs. v Egan, supra,* p 690; *see, Matter of Stilsing Elec. v County of Albany,* 97 AD2d 631, 632). These circumstances prevailing, the action is barred by laches.

Alternatively, we find that relitigation of the standing issue is barred by the doctrine of res judicata. The issue is whether the prior determination that plaintiffs lacked standing pre-

cludes them from now asserting an alternative basis for standing, i.e., as *voters,* which they failed to raise in the first suit. Plaintiffs maintain that the instant action is distinct from the initial litigation due to their present status as voters and the fact that they no longer challenge the issuance of the bonds but seek to vindicate their constitutional right to vote. In other words, plaintiffs have shifted their challenge from the bond financing question to the State's actual use and expenditure of the funds without voter approval pursuant to NY Constitution, article VII, § 11. We find this to be a distinction without a difference. There is little question that plaintiffs' present challenge emanates from the same factual source as the earlier litigation and centers around the exact same issue, i.e., whether they were deprived of their constitutional right to vote on a plan to incur a long-term debt. As Special Term aptly observed, plaintiffs' piecemeal focus on the expenditure provisions of the Act involves the operative provisions of the entire financing scheme and necessarily affects the bond issuing provisions. Moreover, plaintiffs were voters at the time of the initial lawsuit, had the opportunity to sue in that capacity and do not base the present claim on any new events. Clearly then, the instant claim arises from the same transaction *(see, Matter of Reilly v Reid,* 45 NY2d 24, 29; Restatement [Second] of Judgments § 24 [2] [1982]).

To invoke the doctrine of res judicata, however, it must also be demonstrated that the prior claim was actually decided on the merits *(Maitland v Trojan Elec. & Mach. Co.,* 65 NY2d 614, 615-616; *Matter of Farkas v New York State Dept. of Civ. Serv.,* 114 AD2d 563). Plaintiffs contend that since only the issue of standing was decided in the previous action, res judicata does not apply. We disagree. Res judicata effect may be given to the narrow ground on which the earlier adjudication was premised *(see, Smith v Russell Sage Coll.,* 54 NY2d 185, 194; Siegel, NY Prac § 446, at 591). In our view, the previous determination that plaintiffs lacked standing was "on the merits" insofar as the standing issue is concerned. Res judicata pertains not only to matters actually litigated, but also to any which might readily have been litigated *(Hyman v Hillelson,* 79 AD2d 725, 726, *affd* 55 NY2d 624). Plaintiffs had every opportunity to assert their status as voters in the initial litigation and, having failed to do so, are precluded from raising the issue anew.

In any event, we cannot agree that plaintiffs have standing as voters to challenge the constitutionality of the Act. Ini-

tially, we observe that the "zone of interest" standing test articulated in *Matter of Dairylea Coop. v Walkley* (38 NY2d 6, 8-11) and used by Special Term does not apply. Since plaintiffs challenge the constitutionality of the Act, the proper test is whether, in fact, the person claiming standing has been injured *(see, Matter of Donohue v Cornelius,* 17 NY2d 390, 397). The question presented here is not, as plaintiffs assert, the dilution of their vote as individuals *(see, Baker v Carr,* 369 US 186, 204), but the right of all voters to vote on the bond issue. In essence, plaintiffs have raised the very same constitutional challenge, as voters, which they raised as taxpayers in the initial lawsuit. Having simply adopted a different label, plaintiffs do not have standing under *New York State Coalition for Criminal Justice v Coughlin* (64 NY2d 660, 662, *supra*).

Finally, were we to consider the constitutionality of the Act, the result would not be different from our previous determination *(see, New York State Coalition for Criminal Justice v Coughlin,* 103 AD2d 40, 46-47, *supra*).

KANE, J. P., CASEY, LEVINE and HARVEY, JJ., concur.

Order and judgment affirmed, with costs.