■ LANDAU, P.C., as Successor, by Change of Name, to MORRIS J. EISEN, P.C., et al., Appellants, v LaRossa, MITCHELL & Ross, et al., Respondents. [838 NYS2d 773]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered April 4, 2005, which, upon reargument, adhered to the same court's prior order, entered April 21, 2003, granting defendants' motion to dismiss the complaint, affirmed, without costs.

The court properly dismissed the claims of individual plaintiff Morris J. Eisen for lack of standing since the issue of Eisen's standing to assert his presently alleged claims had been previously decided in orders affirmed by this Court (*Morris J. Eisen, P.C. v Larossa, Mitchell & Ross*, 282 AD2d 996 [2001]).

Moreover, the motion court also correctly dismissed the claims of Landau, P.C., the purported successor, by change of name, to Morris J. Eisen, P.C. In a previous order, affirmed by this Court (*id.*), leave to add Landau, P.C. as a party plaintiff as successor to Eisen, P.C. was denied on the ground that plaintiffs had previously failed to provide reasonable justification for the delay in taking the necessary steps to revive that entity. Since absolutely none of the circumstances surrounding that decision have changed, we decline to reconsider the issue, or to overrule it by allowing Landau, P.C. to commence a new action. Further, because Eisen, P.C., the plaintiff in the former action, had been dissolved, and because Morris Eisen, as a disbarred attorney, and in view of all of the circumstances, including the documentary evidence, could not have revived that firm, coupled with the fact that leave to add Landau, P.C. was denied, we conclude that the within action would be time-barred in any event as it is not entitled to the six-month grace period set forth in CPLR 205 (a).

Contrary to defendants' assertions, this appeal is not barred by reason of the circumstance that plaintiffs filed a notice of, but did not perfect their appeal from the April 21, 2003 order, the prior appeal never having been dismissed (*see Rodriguez v National Equip. Corp.*, 304 AD2d 494, 495 [2003]; *Stride Contr. Corp. v Board of Contract & Supply of City of Yonkers*, 181 AD2d 876, 878 [1992]). Concur—Saxe, Nardelli and Sweeny, JJ.

Andrias, J.P., and McGuire, J., concur in part and dissent in part in a memorandum by McGuire, J., as follows: While I agree with the majority that Supreme Court properly dismissed the claims of plaintiff Morris J. Eisen, I disagree with the majority's conclusion that the claims of plaintiff Landau, P.C. (Landau) were properly dismissed. Accordingly, I dissent in part.

In 1986 the City of New York commenced a civil action against, among others, Morris J. Eisen, P.C. (the Eisen firm), and its sole shareholder, Eisen, seeking to recover sums the City

had expended to settle or pay judgments in three personal injury actions. The City claimed that Eisen and others associated with the Eisen firm had engaged in fraudulent conduct in procuring the settlements and judgments. During the pendency of the City's action, Eisen (as well as other individuals associated with the Eisen firm) was indicted and convicted in federal court for engaging in a pattern of racketeering activities designed to ensure that the Eisen firm would recover large damage awards or settlements from civil defendants, including the City. Eisen also was disbarred as a result of that conviction (*Matter of Eisen*, 174 AD2d 141 [1992]). Defendants represented Eisen in both the civil and criminal proceedings, and the Eisen firm in the civil action.

By an amended certificate of incorporation filed with the New York State Secretary of State on September 4, 1992, the Eisen firm changed its name to Landau, of which Eisen's daughter became the president and sole shareholder; Eisen's name was removed from the certificate of incorporation. Despite the filing of the amended certificate, Eisen, in his purported capacity as the sole shareholder of Landau, executed documents dated December 30, 1992 purporting to liquidate and dissolve Landau and assign all of the entity's assets to Eisen.[1]

Notwithstanding the change of corporate name and the removal of Eisen as president, the City's action continued against Eisen and the Eisen firm. By an order dated February 24, 1995, Supreme Court granted partial summary judgment to the City, awarding the City summary judgment on several of its causes of action against some of the individually named defendants and the Eisen firm. With regard to the liability of the Eisen firm, Supreme Court reasoned that, as a result of the criminal convictions of Eisen and his associates, the firm was collaterally estopped from relitigating issues related to its liability to the City. Defendants, who represented the Eisen firm, submitted only the affirmation of counsel in opposition to the motion.

Shortly after the City's motion for summary judgment was granted, defendants, along with newly retained cocounsel, moved on behalf of the Eisen firm for leave to renew and reargue the City's motion for summary judgment, asserting new arguments and proffering new evidence supporting the Eisen firm's contention that summary judgment as against it was improper because triable issues of fact existed regarding the extent to which, if any, the criminal convictions caused the City's

---

1. By a document executed in September 1999, Eisen's daughter, as president and sole shareholder of Landau, purported to ratify the liquidation and dissolution of Landau and assignment to Eisen of Landau's assets.

losses, i.e., led to the settlements and judgments. Stated differently, the position of the Eisen firm was that the personal injury actions had merit and would have resulted in settlements or judgments regardless of any misconduct on the part of Eisen and his associates. By an order dated July 25, 1995, Supreme Court summarily denied the motion to renew and reargue.

In July 1998, Eisen and the Eisen firm commenced a legal malpractice action against defendants, claiming that defendants failed adequately to represent Eisen and the Eisen firm in the City's action. Specifically, Eisen and the Eisen firm claimed that defendants failed properly to conduct discovery and oppose the City's motion for summary judgment, and that but for defendants' negligence summary judgment would not have been granted against Eisen and the Eisen firm.

By an order dated January 10, 2000, Supreme Court granted defendants' motion to dismiss the complaint. The court determined that Eisen lacked standing to maintain the action because, as a result of his conviction, he had no interest in the Eisen firm (Business Corporation Law § 1509).[2] The court rejected Eisen's argument that, by virtue of the purported assignment between Landau and Eisen, he had standing to assert his putative claims. With respect to the Eisen firm, the court stated that the firm had been dissolved, either on December 30, 1992 (when Eisen executed the documents purporting to dissolve the corporation) or on March 26, 1997 (when the Secretary of State dissolved Landau pursuant to Tax Law § 203-a based on its failure to pay certain franchise fees), and that under either scenario the prosecution of the legal malpractice action did not constitute a transaction related to the winding up of the Eisen firm's affairs and thus the firm lacked capacity to maintain the action.

Eisen and the Eisen firm then sought leave to renew and reargue defendants' motion to dismiss, and for leave to amend their complaint to add Landau as a plaintiff. By an order dated August 10, 2000, Supreme Court denied the motion. While acknowledging that Eisen and the Eisen firm had submitted evidence that the dissolution order of the Secretary of State had

---

2. Business Corporation Law § 1509 states, in pertinent part, that: "If any shareholder [or] director . . . of a professional service corporation who has been rendering professional service to the public becomes legally disqualified to practice his profession within this state, he shall sever all employment with, and financial interests . . . in, such corporation forthwith or as otherwise provided in section 1510 [e.g., severance must occur within six months of disqualification] . . . . A professional service corporation's failure to enforce compliance with this provision shall constitute a ground for forfeiture of its certificate of incorporation and its dissolution."

been annulled after the issuance of the order dismissing the complaint,[3] Supreme Court stated that Eisen and the Eisen firm "were, or should have been, aware of the dissolution order [at the time they opposed defendants' motion to dismiss]," and they gave "no reasonable justification for their long delay in paying the [Eisen firm's] taxes and taking any other necessary steps to have the dissolution annulled." The court continued, "[h]aving rejected . . . the motion to renew for failure to provide reasonable justification for their delay in taking the necessary steps to revive Landau . . . , the court rejects . . . [the] motion to amend [the] complaint to add Landau . . . as a plaintiff." This Court, without opinion, affirmed both the order granting defendants' motion to dismiss and the order denying the motion of Eisen and the Eisen firm for renewal and reargument (*Morris J. Eisen, P.C. v Larossa, Mitchell & Ross*, 282 AD2d 996 [2001]). A judgment was then entered dismissing the complaint "without prejudice."

Plaintiffs—Eisen and Landau, as successor to the Eisen firm—commenced the present action against defendants asserting legal malpractice claims identical to those asserted by Eisen and the Eisen firm in the first malpractice action. Supreme Court granted defendants' motion to dismiss this action, finding that the action is barred under the doctrine of res judicata. Plaintiffs then moved to reargue defendants' motion to dismiss, which Supreme Court granted and adhered to its initial determination. Plaintiffs appeal from this last order.

The disposition of this appeal turns on the preclusive effect of the orders issued in the first malpractice action. "Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action. As a general rule, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 347 [1999] [internal quotation marks and citations omitted]). Res judicata applies only when a final determination is rendered on the merits (*Jimenez v Shippy Realty Corp.*, 213 AD2d 377 [1995]; *see Thomas v City of New York*, 239 AD2d 180 [1997]). The doctrine of collateral estoppel, or issue preclusion, "is intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate

---

**3.** Landau satisfied its debt to the Secretary of State on February 16, 2000, approximately one month after the order dismissing the first malpractice complaint was issued by Supreme Court.

an issue that has already been decided against it. . . . Its essential ingredients are: first, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination" (*Matter of Juan C. v Cortines*, 89 NY2d 659, 667 [1997] [internal quotation marks and citations omitted]).

The underlying merits of the complaint in the first malpractice action were not reached by Supreme Court in either its initial order dismissing the complaint or its order denying the motion for leave to renew and reargue and to add Landau as a plaintiff. Rather, in those orders Supreme Court determined that: (1) Eisen lacked standing to maintain the action, (2) the Eisen firm lacked capacity to maintain the action, and (3) neither renewal of the motion seeking dismissal of the complaint nor amendment of the complaint to add Landau as a plaintiff was warranted because the Eisen firm failed to offer a reasonable justification for its delay in reviving the dissolved entity. The orders, which resolved a motion to dismiss pursuant to CPLR 3211 and a motion to renew and reargue a motion to dismiss pursuant to CPLR 3211, are entitled to res judicata treatment but only with respect to the points that were decided on the merits (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:66; *see Coutsodontis v Peters*, 39 AD3d 274, 275 [2007], citing Siegel, NY Prac § 276 [4th ed]).[4] The dismissal of the first malpractice action was based on Eisen's lack of standing and the Eisen firm's lack of capacity.[5] Neither a dismissal for lack of standing nor lack of capacity poses an absolute bar to a new action because neither reflects a disposition on the underlying merits of the claims (Siegel,

---

**4.** The preclusive effect of an order that results in the dismissal of an action on a ground that is curable and does not touch on the underlying merits of the claims cannot generally be characterized as either res judicata (claim preclusion) or collateral estoppel (issue preclusion). Rather, "[t]he doctrinal element in this context is a kind of hybrid between claim preclusion and issue preclusion: the thing dismissed in round one was the 'claim', but the dismissal was predicated on what might be considered a single and not-finally-dispositive 'issue' " (Siegel, NY Prac § 446).

**5.** The separate and distinct concepts of capacity and standing, while similar, are not interchangeable (*Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 154 [1994]). Standing relates to whether a matter is justiciable and the determinative inquiry is whether "the party seeking relief has a sufficiently cognizable stake in the outcome [of the action] so as to cast the dispute in a form traditionally capable of judicial resolution" (*id.* at 154-155 [internal quotation marks omitted]). Capacity, on the other hand, concerns a party's power to appear and bring a grievance before the court (*id.* at 155).

Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, C3211:66; Siegel, NY Prac § 446). Instead, such are "objections in mere abatement" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, C3211:66, at 111) which do not preclude a new action if the objection is cured or otherwise rectified (Siegel, NY Prac § 446).

Eisen's claims in the present action are barred under res judicata by the orders, affirmed by this Court, in the first malpractice action. Supreme Court expressly considered and decided the issue of whether Eisen, either individually or on behalf of the Eisen firm, had standing to assert any claims. While dismissal for lack of standing is not generally an absolute bar to a new action, Eisen did not cure his lack of standing. Thus, the orders in the first malpractice action bar Eisen's present claims (*see Schneider v David*, 197 AD2d 363 [1993]; *Binkowski v General Elec. Co.*, 25 AD2d 577 [1966], *lv denied* 17 NY2d 423 [1966]; *see also Burns v Egan*, 117 AD2d 38 [1986], *lv denied* 69 NY2d 602 [1986]).

Landau's claims, however, are not precluded by the doctrine of res judicata. In the first order in the first malpractice action, Supreme Court determined that the Eisen firm lacked capacity to maintain the action. In the second order, the court denied leave to renew the prior motion and the application to amend the complaint to add Landau as a plaintiff on the ground that the Eisen firm failed to offer a reasonable justification for its delay in reviving the dissolved entity. For the reasons outlined above, the first order did not pose an absolute bar to a new action by Landau as it could cure its lack of capacity (*see Pullman Group v Prudential Ins. Co. of Am.*, 297 AD2d 578 [2002], *lv dismissed* 99 NY2d 610 [2003]; *see also Tak Shing David Tong v Hang Seng Bank*, 210 AD2d 99 [1994]).[6] The second order, moreover, did not bar the present action. While Supreme Court

---

**6.** While Landau was not a party to the first malpractice action, res judicata, if otherwise applicable, could have served to bar its claims. "[R]es judicata gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein . . . . [Privity] denominates a rule, however, to the effect that under the circumstances, and for the purposes of the case at hand, a person may be bound by a prior judgment to which he was not a party of record. It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action" (*Watts v Swiss Bank Corp.*, 27 NY2d 270, 277 [1970] [internal quotation marks and citations omitted]). Since Landau is the successor to the Eisen firm and Landau's interests were represented by Eisen and the Eisen firm, Landau was in privity with the Eisen firm.

denied both leave to renew and leave to amend the complaint to add Landau, it did not make a determination on the merits of the issue of whether Landau had capacity to assert its claims. Rather, the court found, citing CPLR 2221 (e) (2) and (3), that the Eisen firm provided no reasonable justification for the delay in reviving Landau. Thus, the only point that the court decided on the merits on the second motion was that the Eisen firm had failed to proffer a reasonable justification for its failure to include the new facts on the prior motion (*see* CPLR 2221 [e] [3] [a motion for leave to renew "shall contain reasonable justification for the failure to present such facts on the prior motion"]). Accordingly, the objection in abatement (*see* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, C3211:66, at 111) was cured and res judicata does not bar this action. Similarly, since the issue of Landau's capacity to maintain its claims was never finally decided by Supreme Court in the first malpractice action, Landau is not collaterally estopped from raising that issue in this action (*see Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481 [1979]).

Accordingly, I would modify the order to the extent of reinstating the claims of Landau, and would otherwise affirm.