Jones, J.
We hold today that a taxpayer has standing to challenge enactments of our State Legislature as contrary to the mandates of our State Constitution. Recognizing such procedural right we proceed on the present broad motion to dismiss to consider the sufficiency of the particular claims of unconstitutionality urged here by these petitioners. In so doing, we reject their contentions that the State’s legislative *363 and executive retirement plan is unconstitutional and we dismiss their assertions with respect to the unconstitutionality of budget statutes providing lump sum "lulus” in lieu of expenses for members of the Legislature for failure to state a cause of action as to which declaratory relief may be granted.
Much attention has been devoted in our court to the determination of which litigants, if any, shall be recognized as having legal capacity to test the constitutionality of a State statute authorizing the expenditure of State moneys. Over vigorous dissents, in St. Clair v Yonkers Raceway (13 NY2d 72) by a 4-3 vote our court continued the narrow limitation of persons having such capacity to those "personally aggrieved thereby, and then only if the determination of the grievance requires a determination of constitutionality” (p 76). In reliance on holdings in older cases, we then said (p 76), "It seems to us proper 'that the courts of this state have denied the right of a citizen and taxpayer to bring before the court for review the acts of another department of government simply because he is one of many such citizens and taxpayers’.”
Today we no longer think this proper, and accordingly we depart from our holding in St. Clair, for the persuasive reasons stated by the dissenters there and for reasons enunciated by dissenters in subsequent decisions. Even the majority opinions in these later decisions reflect some lack of enthusiasm for the St. Clair doctrine.
The holding and rationale in Matter of Donohue v Cornelius (17 NY2d 390), the first post-St. Clair case, were very much tempered in Matter of Burke v Sugarman (35 NY2d 39), in which the court recognized the capacity of interested litigants to challenge civil service procedures on constitutional grounds.
In Matter of Posner v Rockefeller (26 NY2d 970, 972) the next case, three of the Judges of our court concurred on the standing issue only under constraint of St. Clair. The following year in Hidley v Rockefeller (28 NY2d 439, 440) three members of the court dissented on the particular standing issue there confronted, as to which the majority position was posited only on citations to St. Clair and Posner.
By way of apparent contrast see Matter of Bell v Levitt (44 AD2d 742, mot for lv to app den 34 NY2d 518).
In other settings in which questions of standing have been posed it has been our disposition to expand rather than to contract the doctrine (e.g., Matter of Douglaston Civic Assn. v *364 Galvin, 36 NY2d 1; Matter of National Organization for Women v State Div. of Human Rights, 34 NY2d 416; cf. Matter of Burke v Sugarman, supra, p 45).
We are satisfied that the time has now come when the judicially formulated restriction on standing (which we recognize has had a venerable existence) should be modified to bring our State’s practice with respect to review of State legislative action into conformity not only with the practice in the majority of other States but also with the procedural standing of taxpayers to challenge local actions (General Municipal Law, § 51). We are now prepared to recognize standing where, as in the present case, the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action. In the present instance it must be considered unlikely that the officials of State government who would otherwise be the only ones having standing to seek review would vigorously attack legislation under which each is or may be a personal beneficiary. Moreover, it may even properly be thought that the responsibility of the Attorney-General and of other State officials is to uphold and effectively to support action taken by the legislative and executive branches of government. As Judge Fuld wrote generally in St. Clair (supra, p 79) "The suggestion * * * that the Attorney-General and other state officials may be relied upon to attack the constitutional validity of state legislation is both unreal in fact and dubious in theory”. His estimate of the situation has been verified in the years since St. Clair.
Where the prospect of challenge to the constitutionality of State legislation is otherwise effectually remote, it would be particularly repellant today, when every encouragement to the individual citizen-taxpayer is to take an active, aggressive interest in his State as well as his local and national government, to continue to exclude him from access to the judicial process — since Marbury v Madison (1 Cranch [5 US] 137), the classical means for effective scrutiny of legislative and executive action. The role of the judiciary is integral to the doctrine of separation of powers. It is unacceptable now by any process of continued quarantine to exclude the very persons most likely to invoke its powers.
We, therefore, recognize the standing of these petitioners to raise for judicial adjudication the claims of unconstitutionality that they now urge upon us.
*365 We turn then to the procedural aspects of this appeal, since the Appellate Division, erroneously as we now hold, disposed of the case on the standing issue.
Although the petition may be said to be imprecisely drawn and appears to have been conceived as perhaps intended to institute a proceeding under CPLR article 78, both declaratory and injunctive relief are sought. In this circumstance and to allow for the proper prosecution of the action we exercise the authority granted in CPLR 103 (subd [c]) and convert the proceeding into an action for a declaratory judgment — the appropriate vehicle for examination of the constitutionality of legislation (Matter of Jerry v Board of Educ. of City School Dist. of City of Syracuse, 35 NY2d 534, 544; Matter of Gold v Lomenzo, 29 NY2d 468, 476, n 4; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 458; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.06g).
The action, so converted, is before us on respondents’ motion to dismiss under CPLR 3211. The motion was grounded, inter alia, on lack of standing and failure to state a cause of action and included the customary prayer for “such other arid further relief as to this court may seem just and proper”. The material allegations of the petition must be deemed to be constructively admitted; the differences between the parties on a motion to dismiss revolve exclusively around questions of law.'
In these circumstances, and once it has been determined that the case is properly one for declaratory relief, the court may properly proceed, on a motion to dismiss in an action for a declaratory judgment, to a consideration of the sufficiency of the plaintiff’s claims on the merits (St. Lawrence Univ. v Trustees of Theol. School of St. Lawrence Univ., 20 NY2d 317; Civil Serv. Forum v New York City Tr. Auth., 4 NY2d 866, affg 4 AD2d 117; Plaza Mgt. Co. v City Rent Agency, 31 AD2d 347; Matter of Mandis v Gorski, 24 AD2d 181; Garcia v Motor Vehicle Acc. Ind. Corp., 18 AD2d 62; cf. German Masonic Temple Assn. v City of New York, 279 NY 452, 457).
We concern ourselves only with the assertions advanced on the merits by the petitioners. They challenge the constitutionality of two legislative enactments — the State’s legislative and executive retirement plan and budget statutes providing lump sum “lulus” in lieu of expenses for members of the Legislature.
*366 We reject petitioners’ contentions that the legislative and executive retirement plan violates provisions of our State Constitution. Petitioners first assert that the retirement plan (unidentified in petitioners’ papers but presumably the plan established by L 1968, ch 219, now to be found in § 80-a of the Retirement and Social Security Law) violates section 7 of article XIII which provides: "Each of the state officers named in this constitution shall, during his continuance in office, receive a compensation, to be fixed by law, which shall not be increased or diminished during the term for which he shall have been elected or appointed; nor shall he receive to his use any fees or perquisites of office or other compensation.” To the extent that this section is applicable to the participants in this retirement plan, petitioners argue that the section bars "future payments for past services” and that compensation can be paid an officer only "during his continuance in office”. Petitioners go on to contend that distribution of retirement plan benefits also violates the proscription against the receipt of "fees or perquisites of office or other compensation”. Finally reference is made to section 6 of article III which provides: "Each member of the legislature shall receive for his services a like annual salary, to be fixed by law. He shall also be reimbursed for his actual traveling expenses in going to and returning from the place in which the legislature meets, not more than once each week while the legislature is in session. Senators, when the senate alone is convened in extraordinary session, or when serving as members of the court for the trial of impeachments, and such members of the assembly, not exceeding nine in number, as shall be appointed managers of an impeachment, shall receive an additional per diem allowance, to be fixed by law. Any member, while serving as an officer of his house or in any other special capacity therein or directly connected therewith not hereinbefore in this section specified, may also be paid and receive, in addition, any allowance which may be fixed by law for the particular and additional services appertaining to or entailed by such office or special capacity. Neither the salary of any member nor any other allowance so fixed may be increased or diminished during, and with respect to, the term for which he shall have been elected, nor shall he be paid or receive any other extra compensation. The provisions of this section and laws enacted in compliance therewith shall govern and be exclusively controlling, according to their terms. Members shall continue to *367 receive such salary and additional allowance as heretofore fixed and provided in this section, until changed by law pursuant to this section.” The argument is implied that nothing under this section authorizes contributions to the retirement plan. By way of anticipatory replication petitioners assert that since the participants in the retirement plan are not otherwise legally or constitutionally entitled to its benefits, no support for the plan can be found in section 7 of article V which provides: "After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.” Petitioners invite our attention to no other pertinent constitutional provision.
We think these arguments, taken singly or in combination, fall far short of establishing constitutional invalidity.
Retirement benefits in the public as in the private sector must now be viewed as a significant and integral component of current compensation. The early concept of a pension as a gratuity paid by the government in recognition of past services (see Dismuke v United States, 297 US 167) is now obsolete. Such benefits are now recognized as a type of deferred compensation (44 NY Jur Pensions and Retirement Systems, § 1, p 256). As we observed in review of the New York State Teachers Retirement System, "the security offered by membership in the retirement system is generally regarded as an inducement to employment in State service or in the public schools. The value of the retirement benefits and prospective rate of payment, especially in the face of continued inflation, is of vital concern to the [members] and might well be the determining factor in their decision to continue in the teaching profession, or seek more lucrative employment.” (Birnbaum v New York State Teachers Retirement System, 5 NY2d 1, 6.) While we recognize that the inducements to as well as the rewards for public service by elected members of the executive and legislative branches of our State government are not precisely parallel to those in private employment or in nonelective positions in government service, nonetheless, in our view retirement benefits constitute as real and substantial a form of compensation as does a pay check. The only significant difference lies in the time of payment. We find nothing in the constitutional provisions on which petitioners rely which forbids deferred payment of compensation currently earned. *368 In a literal sense the right to payment in the future is "received during continuance in office”. Retirement benefits are a component of present compensation (cf. Matter of Day v Mruk, 307 NY 349, 354).
We accordingly conclude that there is no substance to petitioners’ claims that the executive and legislative retirement plan is unconstitutional. As to petitioners’ alleged cause of action in this regard, set forth in their original petition, the motion to dismiss should therefore be denied, and a judgment should be entered below containing a declaration in accordance with the views expressed herein and denying petitioners’ prayers for relief. (St. Lawrence Univ. v Trustees of Theol. School of St. Lawrence Univ., 20 NY2d 317, 325, supra.)
By what was termed a "First Amended Petition, Constitutional Points and Authorities” served several weeks after the motion to dismiss the original petition had been made and affidavits in support and opposition exchanged, petitioners sought to lay constitutional challenge to what has been characterized by the Attorney-General on behalf of respondents as "budget statutes providing lump sum 'lulus’ in lieu of expenses for members of the Legislature”. In the dispositions in the courts below, petitioners’ claims in regard to "lulus” appear to have been blanketed in, perhaps on the theory that the contents of the amended petition somehow were incorporated by reference in the original petition, or that the motion to dismiss previously made should be deemed to extend to the amended petition. Be that as it may we find the first amended petition so imprecise and its allegations so inexactly stated that we conclude that it fails to state an identifiable cause of action. Nothing in the writings either at Special Term or at the Appellate Division is of assistance.
Accordingly, on this branch of the case we hold that petitioners have failed to state a cause of action on which declaratory relief may be granted, either in their favor or in favor of respondents. The motion to dismiss made under CPLR 3211 (subd [a], par 7) to the extent applicable to the amended petition should therefore be granted. Petitioners made no statement in their opposing papers or elsewhere, as required by CPLR 3211 (subd [c]) that they desired leave to plead again in the event the motion to dismiss was granted.