(November 13, 1990)

■ COMMUNITY SERVICE SOCIETY et al., Respondents, v MARIO CUOMO, as Governor of the State of New York, Defendant, and CESAR A. PERALES, as Social Services Commissioner of the State of New York, Appellant. GREATER NEW YORK HOSPITAL ASSOCIATION et al., Respondents, v CESAR A. PERALES, as Social Services Commissioner of the State of New York, Appellant.— Orders, Supreme Court, New York County (Shirley Fingerhood, J.), entered, respectively, November 9, 1989 and November 22, 1989, granting plaintiffs' motions for a preliminary injunction and denying defendant Commissioner's cross motion to dismiss, unanimously affirmed, without costs.

By these actions, consolidated for purposes of appeal, plaintiffs seek, *inter alia,* declaratory and injunctive relief with respect to the defendant Commissioner of Social Services' implementation and establishment of certain regulations entitled Medicaid Utilization Thresholds (MUTS). These MUTS, in effect, would establish new Medicaid procedures of systematic application by setting forth, as stated by the motion court, "annual utilization thresholds limiting payment for ambulatory services provided to Medicaid recipients." As provided in the regulations, recipients will be limited to a certain number of visits varying according to the nature of the specialty involved. The basic thresholds, however, *may* be increased upon compliance with the procedures outlined in the regulations. The regulations, which are fully discussed in the motion court's opinion, will not be further described here. It is here sufficient to note that MUTS present an elaborate and complex new system with respect to the delivery of Medicaid services. Such system potentially will involve an entirely new computer system and the retraining of a substantial number of personnel. The procedures will impact greatly on that sector of our society, including the poor, disabled and elderly, which must rely on governmental assistance to obtain essential medical services.

Plaintiffs in each of the actions moved for a preliminary injunction to prevent the defendant Commissioner from implementing MUTS and the defendant Commissioner cross-moved to dismiss. In a thorough and comprehensive opinion, with which we agree, the motion court granted a preliminary injunction while denying the motion to dismiss.

Considering first the contention that the various plaintiffs lack standing, we note that the plaintiffs fall into several categories, i.e., the organizational plaintiffs, the taxpayer plaintiffs, Medicaid recipients, and individual and institutional health care providers, as well as provider associations representing numerous hospitals, clinics and physicians throughout the State. In sum, a fair representation of the community affected by these far-reaching regulations, both the recipients of the services provided and the providers of the services, are parties to these actions. Essentially these are the persons and organizations that Medicaid was either created to help or who are necessary to insure that the system will function effectively.

With respect to the membership corporations, consisting in part of Medicaid recipients, we cannot agree with defendant's contention that these organizations "failed to show that they

have sufficient 'personal' stakes in the subject matter to give them standing to raise their present claims." As stated by the motion court, quoting *Matter of New York State Assn. of Community Action Agency Bd. Members v Shaffer* (119 AD2d 871, 874), " '[O]rganizational parties have standing if they have aggrieved members or a specific interest (beyond merely that of concerned citizens or taxpayers) in the litigation in question.' * * * DIA and CIDNY also allege that they are advocacy and resource centers for the disabled, many of whom are Medicaid recipients. Accordingly, they are proper parties because of their specific interest, greater than that of concerned citizens or taxpayers, in defendant's administration of the programs involved. *(See National Organization for Women v. State Division of Human Rights* 34 NY2d 416)." To this we would only add that under the circumstances of this matter, considering the nature and over-all potential impact of the regulations, to hold that membership organizations of this type do not have standing in these situations could possibly leave unprotected that part of society most in need of the representation and protection these organizations are able to provide.

With respect to the contention that the complaint, insofar as the organizational plaintiffs are concerned, is insufficient for failure to allege that the conduct of lawsuits is included among the purposes for which they are chartered, we find that the allegations in the complaint as to the membership corporations' status are sufficient for pleading purposes *(see, European Am. Bank & Trust Co. v Boyd,* 131 AD2d 629; CPLR 3015 [b]).

We also agree with the motion court's conclusion that the taxpayer plaintiffs, Bronx Borough President Fernando Ferrer and Elizabeth Kreuger, have standing pursuant to State Finance Law § 123-b (1). Taxpayer standing has been treated liberally *(Boryszewski v Brydges,* 37 NY2d 361, 364).

We consider disingenuous the contention that the taxpayers' action does not lie since such must "involve a challenge to a direct expenditure of state funds [and all that is involved here is] the mere promulgation of * * * regulations [which do] not directly involve the expenditure of state funds, even if implementation of the program will". Such argument involves the ultimate resolution of the merits of the action, rather than the standing of the parties. At this juncture of the proceeding sufficient is alleged to constitute a proper challenge to what might be a "wrongful expenditure * * * [or] misapplication * * * of state funds" (State Finance Law § 123-b [1]).

Next, we also find without merit the contention that the Medicaid recipients lack standing "since [they] could not show * * * that they would with some degree of certainty suffer the harm they allege". Much of the contention that the Medicaid recipients lack standing was predicated on the fact that the action was begun when the regulations were merely in the proposal state. Since the final regulations have been issued, this argument is to an extent moot. To the extent that the argument is predicated on the contention that no actual injury has been shown, such presents a rather narrow view of what is involved. As stated previously, we are confronted with far-reaching, complex changes to a massive program created to provide crucial services to a significant portion of our society in need of assistance. The new regulations establish new restrictions and controls on medical services. And, while it might ultimately be found that the regulations are in accordance with statutory mandates, still at this pleading stage of the proceeding there is sufficient alleged to establish that the Medicaid recipients could be adversely affected and accordingly they do have standing.

Finally, with respect to the action by the various providers, we also agree with the motion court. The issue of standing here must be considered in context of the entire Medicaid system as well as the problems MUTS hope to address. As noted by the motion court: "Plaintiffs ask that the administrative demands of MUTS be viewed in the present context, i.e., the shortage of primary care physicians who will accept Medicaid patients at the low reimbursement rate paid by defendant * * * resulting in medicaid recipients['] care in hospital outpatient facilities." Also, we note, as more fully described by the motion court, the difficulty in complying with existing Medicaid procedures, the alleged precarious financial conditions of various hospitals throughout the State, the potential costs of complying with MUTS, the time required "to input the information and to ascertain the threshold status * * * of hundreds of outpatients seen each day * * * and estimate the cost of the additional staff and equipment required for that purpose alone."

The appellant urges that the providers have a mere generalized interest in the Medicaid program. It is argued that the "intended beneficiaries are the needy and impoverished, whereas providers are incidental to its purpose." It is interesting to note that on the one hand the appellant has maintained that the intended beneficiaries, as recipients, do not themselves have standing, while on the other hand he takes the

position that these intended beneficiaries are the only beneficiaries of the program and accordingly the providers lack standing.

Again this analysis oversimplified the issue. The Medicaid program, to be effective, cannot so be parsed to eliminate from its sphere that group called "providers". This group cannot be viewed as merely an "incidental" in this crucial program. The "providers" here proceed not simply to advance a generalized business interest (which would not confer standing; see generally, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, 69 NY2d 406), but rather, as essential participants of a hopefully unified system which, to be properly operative, must have the participation of a substantial portion of the medical community. To hold that "providers" here have no standing would ignore the realities of the difficulties in the delivery of the medical services Medicaid should provide. We note that it has been held that dental Medicaid providers do have standing to challenge the Medicaid reimbursement schedule. (Matter of Dental Socy. v Carey, 61 NY2d 330.)

We last consider the contention that MUTS were statutorily authorized, that the regulations were properly adopted, and that accordingly the preliminary injunction should not have been issued.

Before addressing this point, we note that the motion court, before issuing the injunction, carefully considered the likelihood of success on the merits, the showing of irreparable harm, and the importance of maintaining the status quo. We basically agree with the court's careful analysis and, therefore, our discussion of this issue will be brief.

It should first be pointed out that subsequent to the argument of this appeal, the Legislature rejected the attempt by the Department of Social Services to have enacted legislation respecting a "system of utilized controls."

In any event, on this record no abuse of discretion can be discerned by the issuance of the preliminary injunction. The appellant in support of MUTS has pointed to no specific statutory authority permitting the imposition of initial general service limits. And while appellant in effect points to a system which, after implementation, will provide the delivery of necessary medical services, still that cannot now be determined. The procedures set forth under MUTS as outlined in the record and discussed by the motion court are highly complex, and it is not entirely clear that they comply with the mandates of the Social Services Law.

Although Social Services Law § 20 (3) (d) does empower the Commissioner to "establish * * * regulations", there is no specific authority for "barring access to necessary medical care." While ultimately such might be determined not to be the case, sufficient has been raised to create a substantial issue as to whether MUTS will provide a system consistent with the enabling provisions of the Social Services Law (e.g., §§ 363, 365 [2]). Social Services Law § 364 (1) (d) requires the Commissioner to review "with the advice and assistance of the state department of health, the quality and availability of medical care and services furnished * * * to assure that the quality of medical care and services is in the best interest of the recipients". Social Services Law § 365 (2) requires that the Department provide medically necessary services. At this stage of the proceeding, as indicated, we cannot say that MUTS do indeed comply with these mandates.

In sum, considering the above provisions of the law, as well as the potential for harm due to the complexity of the system, we find no abuse of discretion in the issuance of the preliminary injunction. Also, at this juncture, considering the fact that the record shows that the system itself has many problems to be considered and solved in its implementation, the order below properly maintains the status quo while challenges to the system are more carefully explored at a later stage of the proceedings. Concur—Murphy, P. J., Sullivan, Milonas, Rosenberger and Asch, JJ.