OPINION OF THE COURT
William H. Keniry, J.
Plaintiffs instituted this action against the named defendants seeking a declaratory judgment declaring, inter alla, the 1991-1992 budget of the State of New York unconstitutional; declaring Laws of 1991 (ch 410, § 14) unconstitutional; declaring Laws of 1991 (ch 166, §§ 325, 329, 335) unconstitutional; and for a permanent injunction.
The general basis of the plaintiffs’ attack upon constitutionality is first, they allege, the Governor did not include in his proposed budget "without revision” the itemized estimates of the judiciary and second that the methods adopted to effectuate an $80 million loan from the State Thruway Authority to the State are fatally flawed.
Defendants move for judgment dismissing the complaint on the grounds that plaintiffs lack standing to sue, plaintiffs are guilty of loches and the claims in the complaint are moot, not ripe and/or not justiciable.
Plaintiffs are residents of the Counties of Warren and Washington and are taxpayers of the State of New York. The defendants are grouped for purposes of this decision into two categories, the State defendants and the Thruway defendants. The State defendants include the Governor, the Legislature and its leaders, the Comptroller, various State budget officials and the Department of Transportation. The Thruway defendants include the New York State Thruway Authority and its chairman.
Plaintiffs’ verified complaint sets forth three causes of action. The first alleges that the 1991-1992 budget is unconstitutional because the Governor failed to comply with NY Constitution, article VII, §§ 1 and 2 by not including the 1991-1992 *591 itemized estimate of the financial needs of the judiciary in his proposed budget "without revision”.
The plaintiffs’ second and third causes of action challenge certain provisions of law which authorize the State Comptroller and the New York State Department of Transportation to enter into "debt service contracts” and "cooperative highway contractual agreements” with the New York State Thruway Authority which allegedly violate NY Constitution articles VII and X.
The defendants attack in the instant motion, not the substance nor the merits of plaintiffs’ causes of action, but rather the right of these three plaintiffs as citizen-taxpayers to mount these particular constitutional challenges.[1]
A plaintiff must have standing in order to maintain an action for a declaratory judgment. As succinctly stated by the Court of Appeals in Society of Plastics Indus. v County of Suffolk (77 NY2d 761, 769): "Whether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation (Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9). Standing is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria (see, Comment, Standing of Third Parties to Challenge Administrative Agency Actions, 76 Cal L Rev 1061, 1067-1068 [1988]; see also, Warth v Seldin, 422 US 490, 498). That an issue may be one of 'vital public concern’ does not entitle a party to standing. Courts surely do provide a forum for airing issues of vital public concern, but so do public hearings and publicly elected legislatures, both of which have functioned here. By contrast to those forums, a litigant must establish its standing in order to seek judicial review.”
The courts of New York have eased traditional impediments to the standing of taxpayers seeking to challenge constitutionality of legislative enactments (Boryszewski v Brydges, 37 NY2d 361). In modifying a long line of cases which effectively barred taxpayers from mounting such constitutional challenges, Judge Hugh R. Jones writing for the majority of the *592 Court of Appeals in Boryszewski v Brydges (supra) stated: "We are now prepared to recognize standing where, as in the present case, the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action” (37 NY2d, at 364).
Some two months after the Boryszewski v Brydges (supra) decision was issued, article 7-A of the State Finance Law became effective. The purpose of article 7-A is stated in State Finance Law § 123.
"123. Legislative purpose
"It is the purpose of the legislature to recognize that each individual citizen and taxpayer of the state has an interest in the proper disposition of all state funds and properties. Whenever this interest is or may be threatened by an illegal or unconstitutional act of a state officer or employee, the need for relief is so urgent that any citizen-taxpayer should have and hereafter does have a right to seek the remedies provided for herein.”
Citizen-taxpayers are afforded expansive rights by section 123-b of the State Finance Law.
"123-b. Action for declaratory and equitable relief
"1. Notwithstanding any inconsistent provision of law, any person, who is a citizen taxpayer, whether or not such person is or may be affected or specially aggrieved by the activity herein referred to, may maintain an action for equitable or declaratory relief, or both, against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds or state property, except that the provisions of this subdivision shall not apply to the authorization, sale, execution or delivery of a bond issue or notes issued in anticipation thereof by the state or any agency, instrumentality or subdivision thereof or by any public corporation or public benefit corporation.”
Citizen-taxpayers, such as the plaintiffs herein, now have two avenues to attempt to demonstrate standing, a right at common law and a statutory right. The common-law right to standing may be broader than the right provided by statute (see, New York State Coalition for Criminal Justice v Coughlin, 64 NY2d 660). Defendants contend that plaintiffs do not qualify for standing under either avenue. As to the plaintiffs’ first cause of action, they argue that plaintiffs have sustained *593 no injury-in-fact to a personal right which would establish standing at common law nor have they demonstrated that the 1991-1992 budget as adopted was illegal or unconstitutional so as to fall within the purview of State Finance Law article 7-A.
As to the second and third causes of action, defendants contend that plaintiffs’ challenge to the legality of the financing arrangements authorized by the legislation falls within the proscription contained in State Finance Law § 123-b (1) which denies citizen-taxpayer standing in cases involving the authorization, sale, execution or delivery of a bond issue or notes issued by the State or any State agency (see, Wein v Comptroller of State of N. Y., 46 NY2d 394).
Issue has not been joined. On this motion, the court must accept the allegations of the complaint as true and determine whether plaintiffs have standing, present a controversy which is justiciable and not moot and not barred by loches.
Article 7-A of the State Finance Law has been construed liberally in furtherance of the Court of Appeals decision in Boryszewski v Brydges (supra) to permit taxpayers to test the constitutionality of State actions (see, Community Serv. Socy. v Cuomo, 167 AD2d 168) except when the validity of bond measures are challenged (New York State Coalition for Criminal Justice v Coughlin, 64 NY2d 660, affg 103 AD2d 40, supra).
The plaintiffs’ first cause of action attacks the constitutionality of the 1991-1992 State budget on the basis that the Governor failed to include the "itemized estimates of the financial needs * * * of the judiciary approved by the Court of Appeals and certified by the chief judge of the Court of Appeals” in his proposed budget "without revision”.
The Court of Appeals has held that the budgetary process is not "per se always beyond the realm of judicial consideration [and that] [t]he courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government” (Saxton v Carey, 44 NY2d 545, 551). If the budget process was flawed to the point that the 1991-1992 budget is unconstitutional, then the instant case falls squarely within State Finance Law § 123-b (1) which permits a citizen-taxpayer "whether or not such person is or may be affected or specially aggrieved by the activity herein referred to” to seek declaratory relief.
The plaintiffs have standing to maintain the first cause of action.
*594 In the second and third causes of action, plaintiffs question the legitimacy of legislation which authorizes the Comptroller to enter into "debt service contracts” and the State Department of Transportation to enter into "cooperative highway contractual agreements” with the Thruway Authority as part of a plan to effectuate a transfer of $80 million from the Thruway Authority to the State. Plaintiffs contend that such legislation violates constitutional provisions relating to bonding.
Again recognizing that the merits of the plaintiffs’ claims are not now being tested, the court finds that plaintiffs have standing as to the second and third causes of action. The court rejects the defendants’ claim that plaintiffs must await the actual implementation of the legislation before mounting a challenge. This same argument was rejected in an action initiated by the State Comptroller in which he questions the constitutionality of such legislation (Regan v Cuomo, Sup Ct, Albany County, index No. 4892-91, RJI 0191-027499, Oct. 10, 1991, Hughes, J., supra). The court finds no reason to distinguish the rights of these taxpayers in this particular case from those of the State Comptroller in view of the language of State Finance Law § 123-b (1) which permits a challenge against State officials who are "about to cause a wrongful expenditure * * * or any other illegal or unconstitutional disbursement of state funds”.
The court must next address the defendants’ argument that the claims asserted by plaintiffs are moot, not ripe and/or not justiciable. "It is fundamental that in order to establish a cause of action for a declaratory judgment, a plaintiff must present a justiciable controversy” (Cherry v Koch, 126 AD2d 346, 350, lv denied 70 NY2d 603). "Justiciability is the generic term of art which encompasses discrete, subsidiary concepts including, inter alla, political questions, ripeness and advisory opinions” (Matter of New York State Inspection, Sec. & Law Enforcement Employees v Cuomo, 64 NY2d 233, 238). CPLR 3001 requires the existence of an actual controversy between genuine disputants in order for the court to render a declaratory judgment (Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 518). Courts do not issue advisory opinions (Matter of Self-Insurer’s Assn. v State Indus. Commn., 224 NY 13, 16). The rule of justiciability "not only prevents dissipation of judicial resources, but more importantly, it prevents devaluation of the force of judicial decrees which decide concrete *595 disputes” (Cuomo v Long Is. Light. Co., 71 NY2d 349, 354; see also, Weingarten v Town of Lewisboro, 77 NY2d 926).
In applying the principles of justiciability to the case at bar, the court concludes that a justiciable controversy is raised by plaintiffs in each of their causes of action. There is an actual and genuine controversy and the complaint on its face raises issues of constitutional dimensions which are ripe for judicial review.
The final challenge posed by defendants as a bar to the plaintiffs’ maintenance of the first cause of action is the defense of laches.[2]
"Loches is defined as 'such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.’ (2 Pomeroy, Equity Jurisprudence [5th ed.], § 419, pp. 171-172)” (Matter of Barabash, 31 NY2d 76, 81). The essential element of this equitable defense is a showing of unreasonable delay by a party which delay operates to prejudice an opposing party (Marcus v Village of Mamaroneck, 283 NY 325, 332).
The sequence of events culminating in this action began when the Governor submitted his 1991-1992 budget proposal to the Legislature on February 1, 1991. The 1991-1992 budget was signed into law by the Governor on June 11, 1991. This action was commenced by plaintiffs on or about August 6, 1991. The motion to dismiss by the State defendants was made on August 23, 1991 and the Thruway defendants made their motion on August 26, 1991. The motions are based upon the affidavit of Carole Stone, Deputy Chief Budget Examiner, and the affirmation of Alan S. Kaufman, Assistant Attorney-General.
Defendants, in order to establish loches, must show that they have been prejudiced by delay on the part of the plaintiffs. There are no facts in this record from which the court can find, or even infer, that any prejudice sufficient to invoke the doctrine of loches exists.
*596 The defendants’ motions to dismiss the first cause of action on the ground of loches are denied.
The motions to dismiss made by the State defendants and the Thruway defendants are denied in all respects without costs.

. There are at least two other actions now pending which raise certain of the issues set forth in the instant complaint (Regan v Cuomo, Sup Ct, Albany County, index No. 4892-91, RJI 0191-027499; Wachtler v Cuomo, Sup Ct, Albany County, index No. 6034-91, RJI 0191-028719).

. In their memorandum of law, the defendants argue that loches is a defense only to the first cause of action. No argument is raised that loches bars the maintenance of the second or third causes of actions.