*790 OPINION OF THE COURT
Timothy J. Walker, J.
Plaintiff commenced this action, individually and in his capacity as Supervisor of the Town of Arkwright, challenging the constitutionality of various New York State statutes, pursuant to which the State of New York pays real property taxes, or makes payments in lieu of taxes, for lands it owns in certain municipalities, but not in others. Previously, defendants moved to dismiss the complaint on the grounds that plaintiff lacked standing, both in his individual capacity and as Supervisor. Supreme Court (Gerace, J.) granted that part of defendants’ motion “to the extent of dismissing any claims brought by plaintiff in his capacity as Supervisor,” and defendants appealed, contending that the court should have granted their motion in its entirety. The Appellate Division, Fourth Department (15 AD3d 967 [2005]), concluded that Supreme Court properly determined that plaintiff has standing with respect to the first cause of action, alleging the violation of State Finance Law § 123-b (1), but erred in determining that he had standing as a citizen-taxpayer with respect to the second cause of action, alleging the violation of his due process rights pursuant to 42 USC § 1983.
Thus, the Appellate Division specifically determined that plaintiff in his capacity as a citizen-taxpayer “need not demonstrate an injury-in-fact to acquire standing” pursuant to State Finance Law § 123-b (1) (Dillenburg at 968 [citation omitted]).
Plaintiff then filed an amended complaint, which occasioned defendants’ motion for dismissal. The motion was denied (Feroleto, J.). The amended complaint, dated October 26, 2006, deletes reference to plaintiff as Supervisor of the Town of Arkwright, and omits the federal constitutional cause of action.
Basis for the Claim
The taxation of state-owned land by municipalities has long been a matter of controversy. The first statute to permit taxation of state-owned land made the forest preserve taxable the year after its creation (L 1886, ch 280). Numerous similar taxation enactments followed, making various state-owned lands taxable for some or all purposes based upon use, location, or both. The result is, by all means, a “hodgepodge” of statutory provisions devoid of any consistent rationale for taxation. For example, Real Property Tax Law § 532 allows for taxation certain state-owned lands for all purposes; RPTL 533 permits *791 taxation of certain state-owned lands for all purposes except county purposes; and RPTL 536 provides for taxation of certain state-owned lands for school purposes only.
Indeed, a report prepared by the New York State Office of Real Property Services (ORPS) in September 1996 (the ORPS report) confirmed that New York’s taxation scheme “stand[s] alone, in terms of coverage, complexity, and non-uniform treatment of local governments.” (Office of Real Property Services, Compensating Local Governments for Loss of Tax Base Due to State Ownership of Land, at iii [Sept. 1996].) The ORPS report also mentions specifically the disadvantage to Chautauqua County from the State’s policy of making its “acreage taxable for some purposes but not for others.” (ORPS report at 27.)
Even former Governor Pataki acknowledged the Legislature’s “jumbled” approach to taxation of state-owned land when he returned Senate Bill Nos. 258, 430 and 584 (without approval), entitled “An ACT to amend the real property tax law, in relation to subjecting certain state lands subject to taxation.” These bills sought to amend RPTL 532 and 536 to make certain state-owned lands in (among other counties) Chautauqua County, which had been exempt from taxes, subject to taxation for local and/or school purposes.
According to Governor Pataki’s Veto Message Nos. 32-34 (a copy of which is attached as exhibit A to the amended complaint), “[b]y choosing certain properties in certain counties or areas for preferential tax treatment, these [proposed] bills simply add to the ‘jumble’.”
Equally important, Governor Pataki noted further that:
“these bills adopt a ‘piecemeal’ approach to the issue, which creates its own form of unfairness because only a few chosen local governments benefit from State payments while many of our State’s local governments have State-owned lands within their jurisdictions. Meanwhile, these other local governments languish under the continuing burden of tax-exempt State-owned lands without the benefit of State payments. . . .
“Until . . . comprehensive legislation addressing the issue of the taxation of State-owned lands is adopted, my approval of . . . new pieces in the ‘jumble’ of legislation in this area would only further perpetuate the inequity which has, for too long, prevailed in this area of our law” (id.).
*792 While the ORPS report and the Governor’s strongly-worded message were delivered over a decade ago, the Legislature has yet to take action.
For this reason, standing as a taxpayer must be accorded where failure to allow standing would, in effect, erect an impenetrable barrier to judicial scrutiny of government action or, as in this case, inaction, and to remedy a problem identified by the government more than 10 years ago (see Boryszewski v Brydges, 37 NY2d 361 [1975]). This was the reason for the enactment of State Finance Law article 7-A. Plaintiffs remedy in this case under the State Finance Law is one for equitable or declaratory relief. Section 123-e of the State Finance Law sets forth the relief which a court may grant in such a proceeding, including “enjoining the activity complained of” (State Finance Law § 123-e [1]).
The Current Motions
The parties now move for summary judgment. Defendants claim that the amended complaint should be dismissed pursuant to CPLR 1001 and 3211 (a) (7) and (11), alleging that plaintiff lacks standing or legal capacity to sue, that the amended complaint fails to state a cause of action, and that the court may not proceed in the absence of necessary parties. Plaintiff alleges that he is entitled to a judgment determining that the State’s system of permitting taxation of state lands and providing payments in lieu of taxes for some municipalities and not others constitutes a system of taxation and/or payments that is so completely unfair and unequal that it is unconstitutional by virtue of the State Constitution’s guarantee of equal protection of laws, and that defendants should be enjoined from making payments to municipalities under the existing taxation system.
The parties agree that there are no issues of fact present in this case, and that the case is ripe for consideration by way of motions for judgment as a matter of law.
The Standing Argument
Once again, defendants assert standing. However, as the Appellate Division previously noted, section 123-b (1) of the State Finance Law does not require the individual bringing the action to be “affected or specially aggrieved by the activity herein referred to.” Therefore, this aspect of defendants’ motion is denied.
*793 The Necessary Parties Argument
Defendants claim that the amended complaint must be dismissed absent joinder of indispensable parties pursuant to CPLR 1001. The prayer for relief in the amended complaint in part seeks to enjoin defendants from making certain tax and/or payments in lieu of taxes to certain municipalities. However, State Finance Law § 123-b (2) provides that a plaintiff in a citizen taxpayer action “may join as a party defendant the recipient or intended recipient of such a wrongful expenditure” (emphasis added). While defendants allege that the Office of the State Attorney General could not simultaneously represent the interests of the State and the municipalities that receive the payments which plaintiff seeks to enjoin, they correctly acknowledge that the State Attorney General is duty bound to vigorously defend defendants in the case, as well as the constitutionality of the state statutes at issue. As such, the interests of those municipalities which might be inequitably affected by a judgment in this action are being adequately represented by the State of New York. Therefore, this aspect of defendants’ motion is denied.
The Constitutional Challenge
In substance, plaintiff alleges that defendants, their agents and employees, have caused, are now causing, or are about to cause an unconstitutional disbursement of state funds by making tax payments to municipalities whose jurisdictions include state-owned land, while not also making tax payments to other similarly situated municipalities. Plaintiff also seeks, pursuant to section 123-b of the State Finance Law, the equitable relief of a permanent injunction to enjoin these tax payments.
State-owned land within political subdivisions is not subject to taxation. The common-law principle of sovereign immunity, which has been codified in RPTL 404, provides that the State may not be taxed by subservient levels of government, unless the State allows it.
RPTL 532, 534, and 536, as well as Environmental Conservation Law § 15-2115 allow for taxation of certain State lands located in certain counties, cities, towns, or school districts. In addition, the State provides some municipalities, where exempt state lands are located, with payments in lieu of taxes (PILOTs).
Taxation statutes carry a heavy presumption of constitutionality, and the courts will uphold them so long as they bear a *794 rational relationship to any legitimate state purpose. (See Trump v Chu, 65 NY2d 20 [1985], appeal dismissed 474 US 915 [1985].) It is beyond dispute that the original justification for allowing taxation of some state lands bore a rational relationship to a legitimate state purpose. The State sought to compensate various municipalities for:
(a) the large acreage owned by the State and otherwise exempt from local taxation in the Adirondack and Catskill forest preserves;
(b) the fact that state ownership of lands in particular communities conveyed benefits to residents of other areas of the State (e.g., the provision of watershed areas protected and ensured water supplies for heavy-populated downstate areas; and recreational and scenic amenities attracted and were enjoyed by more than a single community’s residence); and
(c) the existence of State-owned land within a community, which resulted in additional service costs.
However, the expansion of taxing authority to include state-owned land in more and more communities, while continuing the exemption for state-owned land with the same characteristics or the same uses in other communities (such as the Town of Arkwright where plaintiff resides), divorced the rational relationship from any legitimate state purpose.
As is evidenced by the proposed Senate bills, Veto Message and the ORPS report cited above, the distinction made between state-owned land where taxation is permitted or PILOTs are provided, and tax-exempt or PILOT-free, state-owned land in the Town of Arkwright (and elsewhere within New York State) is palpably arbitrary and bears no rational relationship to any conceivable state purpose.
There is recognized disparity in taxes imposed upon state-owned lands located within some municipalities, but not on the same property located in others. The application of RPTL 532, 533 and 536, as well as ECL 15-2115 in these circumstances results in invidious discrimination between state-owned properties in those municipalities identified thereunder, and like (and in some circumstances the same) properties located in other parts of the state, and denies plaintiff equal protection of the laws.
The State Constitution does not prohibit dual tax rates or require that all taxpayers be treated the same. It requires only *795 that those similarly situated be treated uniformly. “Thus, the creation of different classes for purposes of taxation is permissible as long as the classification is reasonable and the taxes imposed are uniform within the class.” (See Foss v City of Rochester, 65 NY2d 247, 256 [1985].) However, a classification violates equal protection guarantees if the distinction between the classes is “palpably arbitrary” or amounts to “invidious discrimination.” (See Foss at 257; Lehnhausen v Lake Shore Auto Parts Co., 410 US 356, 360 [1973]; Shapiro v City of New York, 32 NY2d 96, 103-107 [1973], appeal dismissed 414 US 804 [1973].)
Surely, the New York State Legislature starting anew with respect to the Real Property Tax Law could not adopt a haphazard exemption/nonexemption system, and there is no legitimate governmental purpose to be served by perpetuating one. Maintenance of legislative authority in the design of taxing impositions may be desirable, but it cannot justify unequal treatment which results. As commendable as the Legislature’s desire for stability, it is not enough that it had a rational reason for enacting these statutes. (See Cumberland Coal Co. v Board of Revision of Tax Assessments in Greene Cty., 284 US 23 [1931].) “There must also be a rational reason for deliberately imposing the demonstrably different tax burdens on similar properties because of their different geographic locations.” (Foss, 65 NY2d at 260 [citations omitted].)
As in the Foss case, no rational basis for such a difference is suggested, nor apparent here.
Accordingly, plaintiff’s motion for summary judgment is granted and this court hereby enters judgment declaring that defendants, in the course of their duties, have caused, are now causing, and are about to cause an unconstitutional disbursement of state funds by paying taxes and/or payments in lieu of taxes on state-owned land to counties, municipalities, school districts, or special districts in some communities in New York State, while not making such payments on state-owned land situated elsewhere in New York State; and this court further enters judgment pursuant to section 123-e of the State Finance Law permanently enjoining defendants, their agents and employees, from paying taxes and/or payments in lieu of taxes on state-owned land to counties, municipalities, school districts or special districts in some *796 communities in New York State while not paying taxes on state-owned land similarly situated elsewhere in New York State; and this court further enters a stay of enforcement of the judgments entered herein, pending appropriate appellate review thereof.