Glen Oaks Vil. Owners, Inc. v City of New York (2025 NY Slip Op 03101)

Glen Oaks Vil. Owners, Inc. v City of New York

2025 NY Slip Op 03101

Decided on May 22, 2025

Court of Appeals

Cannataro, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 22, 2025

No. 42 

[*1]Glen Oaks Village Owners, Inc., et al., Respondents,
v
City of New York, et al., Appellants.

Amy McCamphill, for appellants.
Leigh M. Nathanson, for respondents.
Phillip J. Levitz, for amicus curiae State of New York.
Sabin Center for Climate Change Law, Richard Ellenbogen, et al., Steven Englebright, et al., amici curiae.

CANNATARO, J.

In 2019, both New York City and New York State enacted legislation aimed at reducing greenhouse gas emissions and transitioning to clean energy in order to combat climate change. Plaintiffs challenge the City's legislation, Local Law No. 97 of 2019, arguing that it is preempted by the State's subsequently enacted Climate Leadership and Community Protection Act (the Climate Act) (L 2019, ch 106). We hold that the Climate Act does not preempt the field of regulating greenhouse gas emissions.
The City Council enacted Local Law No. 97 in May 2019, to require specific reductions in greenhouse gas emissions from large buildings. The legislation seeks to achieve a minimum 40% reduction in greenhouse gas emissions citywide by 2030, as well as a minimum 80% reduction in emissions by 2050, relative to emissions from 2005 (see Administrative Code of City of NY § 24-803 [a] [1]), and sets forth specific methods by which to calculate the annual building emissions limits for covered buildings (see Administrative Code of City of NY §§ 28-320.3.1 through 28-320.3.5). The legislation also created an Office of Building Energy and Emissions Performance to oversee the implementation of and compliance with the emissions standards (see NY City Charter § 651).
In June 2019, the State passed the Climate Act, likewise adopting measures intended to result in a significant reduction of greenhouse gas emissions, but on a statewide basis. The goal of the Climate Act is "to reduce greenhouse gas emissions from all anthropogenic sources 100% over 1990 levels by the year 2050, with an [*2]incremental target of at least a 40 percent reduction in climate pollution by the year 2030," in keeping with national and international projections of necessary measures to minimize the most extreme effects of climate change (L 2019, ch 106, § 1 [4]). Although the state legislation sets these broad targets, it does not establish any specific emissions limits. Rather, it contemplates that, within a year of the Climate Act's effective date, the Department of Environmental Conservation (DEC) will establish statewide greenhouse gas emissions limits (see ECL 75-0107 [1]). It also creates a Climate Action Council, an advisory group made up of 22 members with relevant expertise, and gives the Council a two-year period to prepare a Scoping Plan containing recommendations for attaining statewide greenhouse gas emissions limits (see ECL 75-0103 [1], [2], [11], [13]). Additionally, the Climate Act directs DEC to promulgate regulations reflecting the findings of the Scoping Plan, to ensure compliance with the emissions reduction limits (see ECL 75-0109 [1], [2] [a], [c]). Significantly, the Act contains a savings clause, providing that "[n]othing in this act shall relieve any person, entity, or public agency of compliance with other applicable federal, state, or local laws or regulations, including state air and water quality requirements, and other requirements for protecting public health or the environment" (L 2019, ch 106, § 11). It also contains a provision stating, "[n]othing in this act shall limit the existing authority of a state entity to adopt and implement greenhouse gas emissions reduction measures" (L 2019, ch 106, § 10).
Plaintiffs, representatives of residential buildings subject to Local Law No. 97's emissions requirements, commenced this declaratory judgment action asserting that Local Law No. 97 is preempted by the Climate Act because the State has occupied the field of regulating greenhouse gas emissions [FN1]. Defendants—the City of New York, the City's Department of Buildings and the Commissioner of the Department of Buildings—moved to dismiss pursuant to CPLR 3211 (a) (7), arguing that plaintiffs failed to state a cause of action.
Supreme Court granted defendants' motion and dismissed the complaint in its entirety (2023 NY Slip Op 33867[U] [Sup Ct, NY County 2023]). The Appellate Division modified, on the law, denied the motion as to the preemption cause of action and, as so modified, affirmed (227 AD3d 523 [1st Dept 2024]). The Court held that "defendants failed to show that [the Climate Act] does not preempt New York City's Local Law 97" (227 AD3d at 524). The Court observed that, although the Climate Act contains a savings clause relating to compliance with other applicable local laws, reading the savings clause with the Act's preceding provision—which preserves the authority of "state entit[ies] to adopt and implement greenhouse gas emissions reduction measures" (L 2019, ch 106, § 10)—could permit the conclusion that the savings clause only applies to local laws not relating to the reduction of greenhouse gas emissions.
The Appellate Division granted defendants' motion for leave to appeal to this Court, certifying the question: "Was the order of this Court, which modified the order of the Supreme Court to the extent of denying defendants' motion to dismiss as to plaintiffs' first cause of action, and otherwise affirmed the order, properly made?" We answer the certified question in the negative.
Initially, contrary to plaintiffs' argument, no additional development of the record is required for determination of this matter. A declaratory judgment action is "the appropriate vehicle for examination of the constitutionality of legislation," and "the court may properly proceed, on a motion to dismiss in an action for a declaratory judgment, to a consideration of the sufficiency of the plaintiff's claims on the merits" (Boryszewski v Brydges, 37 NY2d 361, 365 [1975]).
The State Constitution grants local governments the power to enact "local laws not inconsistent with the provisions of th[e] constitution or any general law" relating to certain specified subjects, including the "safety, health and well-being of [the locality's] persons or property" (NY Const, art IX, § 2 [c] [ii] [10]; see also Municipal Home Rule Law § 10 [1] [ii] [a] [12]). State law can preempt local law in one of two ways: either through conflict preemption, which occurs when the local and State laws directly conflict, or field preemption, which occurs "when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility" (DJL Rest. Corp. v City of New York, 96 NY2d 91, 95 [2001]). Plaintiffs have not argued conflict preemption; their sole claim before us is that the State has preempted the field of regulating greenhouse gas emissions.
The State's intent to occupy a particular field can be express or implied (DJL Rest. Corp., 96 NY2d at 95). "An implied intent to preempt may be found in a 'declaration of State policy by the State Legislature . . . or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area' " (96 NY2d [*3]at 95, quoting Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 105 [1983]). Yet, "[t]he mere fact that the Legislature has enacted specific legislation in a particular field does not necessarily lead to the conclusion that broader agency regulation of the same field is foreclosed. The key question in all cases is what did the Legislature intend?" (Garcia v New York City Dept. of Health & Mental Hygiene, 31 NY3d 601, 620 [2018] [quotation marks and citation omitted]). In answering that question, we must determine whether the State's action with respect to a particular subject "demonstrate[s] a desire that its regulations should preempt the possibility of discordant local regulations" (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395, 400 [2003]). Once it has been "determined that the State has preempted an entire field, a local law regulating the same subject matter is deemed inconsistent with the State's overriding interests because it either (1) prohibits conduct which the State law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe or (2) imposes additional restrictions on rights granted by State law" (Jancyn Mfg. Corp. v County of Suffolk, 71 NY2d 91, 97 [1987] [citations omitted]; see also Police Benevolent Assn. of the City of New York, Inc. v City of New York, 40 NY3d 417, 425-426 [2023]).[FN2]
Rather than demonstrating an intent to preempt the field of regulating greenhouse gas emissions, the Climate Act recognizes that local government plays an important role in this area. The Act does not expressly prohibit local regulation of emissions. To the contrary, the Act's legislative findings evince a sense of urgency concerning the implementation of mitigation measures in general and further express the legislature's intent to "encourage other jurisdictions to implement complementary greenhouse gas reduction strategies" (L 2019, ch 106, § 1 [3]). The Act also directs the Climate Action Council to identify and consider measures taken by other jurisdictions, including localities,
when developing the Scoping Plan (see ECL 75-0103 [14] [a], [16]). The absence of any statement that local efforts would be superseded is particularly significant here given that Local Law No. 97 was enacted before the Climate Act, as well as the recognized and longstanding involvement of localities in regulating matters of environmental concern affecting the health and safety of the community, such as air pollution (see e.g. Oriental Blvd. Co. v Heller, 27 NY2d 212, 221 [1970]). Further reflecting the Act's embrace of complementary local action, as noted above, it contains a savings clause stating that it does not relieve any entity from, as relevant here, compliance with other applicable local laws and regulations (see L 2019, ch 106, § 11).
Plaintiffs assert that the nature and statewide significance of the subject matter being regulated support the conclusion that there is a need for uniformity in the area and thus demonstrate an intent to preempt the field (see People v Diack, 24 NY3d 674, 679 [2015]). Although the Climate Act announces an intent to create a "comprehensive regulatory program" (L 2019, ch 106, § 1 [12]) for regulating greenhouse gas emissions, that type of "expansive" language is not dispositive, particularly in the absence of any indication that the legislature had a "desire for across-the-board uniformity" with respect to emissions reduction efforts (Jancyn, 71 NY2d at 98; see also Garcia, 31 NY3d at 620).
The Climate Act represents a wide-ranging, statewide effort to address climate change that is, to some degree, forward-looking and aspirational in nature, establishing the ultimate goals of the reduction of greenhouse gas emissions and leaving the mechanism for the implementation of those goals to further study and eventual regulation. While ambitious in its reach, the legislation is not "so broad and detailed in scope as to require a determination that it has precluded all local regulation in the area, particularly where, as here, the local law would only further the State's policy interests" (Vatore v Commissioner of Consumer Affairs of City of N.Y., 83 NY2d 645, 650 [1994]). We cannot conclude that the "aspirational language" in the legislative findings was intended to prevent localities from taking measures that would help the State achieve its overall emissions goals (see Incorporated Vil. of Nyack v Daytop Vil., [*4]78 NY2d 500, 507 [1991]). We therefore hold that the legislature has neither expressed nor implied any intent to preempt the field of regulating greenhouse gas emissions.[FN3]
Finally, the Appellate Division erroneously determined that the legislation's broad savings clause (L 2019, ch 106, § 11), when read in conjunction with the previous section of the Climate Act, can be read to apply only to "local laws other than greenhouse gas emissions reduction measures" (227 AD3d at 524 [internal quotation marks omitted]). As noted above, section 10 of the Act specifically preserves the existing authority of state entities to "adopt and implement greenhouse gas emissions reduction measures" (L 2019, ch 106, § 10). Section 11, on the other hand, addresses the public's continuing obligation to comply with "other applicable" laws and regulations—whether they be "federal, state, or local." These provisions do not cover the same subject matter. Notably, section 10 is not an authorization for other state agencies to promulgate regulations relating to greenhouse gas emissions, a power specifically conferred in a separate section of the legislation (see L 2019, ch 106, § 8). Section 10 has a much broader reach (addressed to any "state entity") and is not limited to laws and regulations, but rather encompasses any "measures" to reduce emissions. Nor is it reasonable, given the text of section 11 and the structure and purpose of the Act, to read section 11 as requiring compliance with federal emissions guidelines (which the State cannot preempt) but not with local emissions requirements. Moreover, even assuming, as the Appellate Division held, that "one could conclude" that this interpretation is reasonable, it is nonetheless insufficient to show a clearly evinced intent to preempt the field (see Jancyn, 71 NY2d at 96-97). In sum, the Climate Act does not displace Local Law No. 97 through field preemption.
Accordingly, the order insofar as appealed from should be reversed, with costs, defendants' motion granted in accordance with this opinion and the certified question answered in the negative.
Order insofar as appealed from reversed, with costs, defendants' motion granted in accordance with the opinion herein and certified question answered in the negative.
Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.
Decided May 22, 2025

Footnotes

Footnote 1: Plaintiffs raised four additional causes of action challenging the constitutionality of the Local Law. Those causes of action were dismissed and are not at issue in this appeal.

Footnote 2: Contrary to the Appellate Division's analysis, this two-part assessment applies only after determining that the State has intended to occupy the field (see 227 AD3d at 524). 

Footnote 3: Because plaintiffs sought a declaration of the parties' rights, in reversing the Appellate Division and holding that the Local Law is not preempted, a declaration in defendants' favor rather than a dismissal of the first cause of action is appropriate (see Garcia, 31 NY3d at 621 n 4; 200 Genesee St. Corp. v City of Utica, 6 NY3d 761 [2006]; Lanza v Wagner, 11 NY2d 317 [1962]).